[Civ. No. 3277. Fourth Dist. June 15, 1945.]

OTT HARDWARE COMPANY, INC. (a Corporation) et al., Respondents, v. E. D. YOST et al., Appellants.

(And Consolidated Cases.)

Drumm & Drumm and Forgy, Reinhaus & Forgy for Appellants.

Reynolds & Painter and Montgomery & Montgomery for Respondents.

GRIFFIN, J.—These actions for foreclosure of mechanics' liens were consolidated for the purpose of trial and also on appeal.

Defendants and appellants E. D. Yost and his wife Stella M. Yost in 1913 owned property on which was erected a theatre building. Between 1928 and 1940 the building was closed. It became obsolete or antiquated in many respects for presenting entertainment to the public. That was the only purpose for which it was adapted. The necessity for substantial repairs, modernization and improvements was known to all defendants. About September, 1940, defendants L. Kaplan, S. Lelin and Jack Zamsky entered into some oral agreement, as partners, under the firm name and style of "New Yost Theater," for the purpose and object of procuring from defendants and appellants Yost, a lease on the theatre building and its contents, with the object of remodeling the building as a motion picture show house. A lease was prepared, dated October 1, 1940, and was signed by the Yosts and Mr. and Mrs. Kaplan. It contained the usual recitals. In addition, it sets forth that the term of the lease shall be for ten years at $350 per month; that the parties agree that certain alterations are to be made; that plans and specifications therefor shall be presented to and approved by lessors; that lessees shall furnish a bond for faithful performance and cost of labor and materials used therein; lessors agree to pay lessees $100 per month from rentals for actual cost of alterations up to $10,000; that lessees agree to furnish lessors a statement of material and labor supplied as the work progresses; lessees agree that the cost of labor and material shall be fully paid by them at least five days prior to the time for filing any lien therefor; that lessees shall not have the right to remove any improvements made by them at the expiration of or termina-

tion of the lease; that the lease shall remain in escrow until the improvements are completed and paid for.

An addenda to this lease, dated October 26, 1940, recites that $1,000 shall be paid by lessees to lessors and in consideration thereof lessors waive the provisions of the lease requiring lessees to furnish a bond for faithful performance and payment of labor and material. The addenda also provides for the return of the $1,000 to lessees upon the expiration of the time for filing liens if lessees' agreement set forth in the lease is carried out, otherwise that amount is to be forfeited to lessors as liquidated damages. On October 31, 1940, two signed copies of the lease and addenda thereto were deposited in escrow. The escrow instructions provided that the documents were to be there held until the escrow agent was notified by Yost that there had been a compliance with the terms of the lease. On November 1, 1940, defendant E. D. Yost executed a notice of nonresponsibility under section 1192 of the Code of Civil Procedure, and on November 2, 1940, posted and recorded it. The notice recited that the property was subject to a lease between the above-named parties.

November 1, 1940, the partnership ''New Yost Theatre'' took possession of the real property, proceeded with the improvements of the building and completed it on or about January 8, 1941. Plaintiff and respondent Ott Hardware Co., Inc. furnished the heating and ventilating system and other fixtures for a contract price of $4,250. Plaintiff and respondent Perry J. Martinsen rebuilt the projection room and installed a new electrical system throughout the theatre for $5,058. Plaintiff and respondent Ganahl Lumber & Mill Co., Inc. furnished sash, doors and lumber to the extent of $843. Plaintiff and respondent Darrell T. Stuart redecorated the interior for $1,579. Other repairs were made and other labor and materials were furnished. Over $12,000 was expended in work and materials in rehabilitating the building. The copartners failed to pay the claims when due. Liens against the property were duly recorded. On January 28, 1941, Yosts, the lessors, demanded of the escrow agent the return of the lease and addenda for the failure of lessees to comply with the terms thereof. The escrow agent complied with the request. On February 5, 1941, Yosts served on the Kaplans a notice of default based on the grounds (1) that they failed to

pay rent due February 1, 1941; (2) that they failed to pay cost of alterations and repairs within the time required by the lease; (3) that they failed to give statement re work progress; and (4) by reason of lessees' insolvency. Thirty days thereafter Yosts took possession of the property. On April 4, 1941, they sold the theatre to defendant Alfred Gazler (who is not an appellant herein and as to whom the judgment has become final) for the sum of $45,000.

After trial the court found generally in accordance with the facts above related and in addition thereto found that at the date of the execution of the lease and addenda thereto, the Yosts knew that the partnership was contemplating substantial improvements and repairs to the theatre building; that no repairs of any character had been placed in the building for many years preceding the execution of the lease; that in many instances the building did not comply with the fire laws and regulations of the city of Santa Ana; that *the Yosts would not have entered* into the lease unless the lessees named therein *had promised to substantially* modernize the building; that the Yosts had knowledge of the fact that the plaintiffs in the above entitled action had furnished material for use in and about the building situated on their real property described and that substantial amounts of money were due, owing and unpaid to plaintiffs; that the building occupies the whole of the described real property; that without the furnishing of the labor and materials aforesaid the "buildings had no use whatsoever." The court then gave judgment for plaintiffs and provided if the liens be not paid within ninety days after judgment becomes final the "buildings, down to the surface of the ground, be sold according to law," and that out of the proceeds there be paid the amounts found to be due the claimants; that plaintiffs are not entitled to a lien upon or against the land or any portion thereof.

Article XX, section 15, of the Constitution of California provides that "Mechanics, materialmen, artisans, and laborers of every class shall have a lien upon the property upon which they bestowed labor or furnished material, for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such lien."

After the adoption of section 15, the Legislature enacted section 1192 of the Code of Civil Procedure, which provides

in part that "Every building . . . constructed, altered, or repaired upon any land with the knowledge of the owner . . . shall be held to have been constructed, performed or furnished at the instance of such owner . . . and such interest owned . . . shall be subject to any lien . . . unless such owner . . . shall, within ten days after he shall have obtained knowledge of such construction, alteration or repair . . . give notice that he will not be responsible for the same by posting a notice in writing to that effect. . . ."

The effect and purpose of these provisions of the law have been stated in *English* v. *Olympic Auditorium, Inc.*, 217 Cal. 631 [20 P.2d 946, 87 A.L.R. 1281]. It would serve no good purpose to again discuss them here. Suffice it to say the trial court apparently believed the holding in that case was applicable to the facts in the instant case and gave judgment accordingly. It is defendants' contention that the filing of a notice of nonresponsibility by the owner of the land, which land is improved by a building at the time of the contemplated repairs, exempts the entire property from any mechanics or materialmen's liens. This is a question which, from our search, does not seem to have been decided by the Supreme Court of this state. From our examination of the record before us we do not feel that it is necessary to determine that question in this proceeding.

There is a rule of law stated in 36 American Jurisprudence, page 73, section 94, under the subject of Mechanics' Liens, reading as follows:

"A lessee is not generally considered the agent of the lessor within the contemplation of the mechanic's lien statutes merely by virtue of the relation of landlord and tenant. Nor is an agency relationship created merely by the consent of the lessor to the making of alterations and improvements upon the leased premises. Knowledge of, and acquiescence in, the making of improvements by the tenant is insufficient to establish agency.

"With a few exceptions, it is generally held that such relationship may result from contractual provisions of a lease which relate to alterations and improvements to be made by the lessee during the term of the lease. Where the lease contains a provision *requiring* the lessee to make improvements, it is generally held that the lessee is thus constituted the

agent of the lessor for that purpose, within the contemplation of mechanic's lien laws, and this is generally so, irrespective of whether the cost of the improvements is to be borne by the lessor or by the lessee, if it clearly appears that the lessee is *obligated* to make the improvements. However, where it does not otherwise clearly appear that the lessee is *obligated* to make improvements, the question of responsibility for the cost becomes important in determining the intention of the parties. Regard is had also to the character of the improvements and the benefits to be derived therefrom, in determining whether the parties intended to create an agency for the making of improvements. A lease merely authorizing the lessee to make improvements does not render the lessee the agent of the lessor for that purpose. It has been held in several cases that where a lease *requires* the lessee to make improvements, a stipulation to the effect that nothing therein contained shall be deemed to constitute the lessee the agent of the lessor, or to impose any liability on the lessor for mechanics' liens, is ineffectual. However, the contrary has been held in practically an equal number of cases." (Italics ours.) (Citing cases.) (See, also, *Comley Lumber Co.* v. *Mid-Co-Petroleum Co.*, 116 Kan. 78 [225 P. 744].)

Our attention has not been called to any direct authority in this state as to which rule has been or may hereafter be followed by the appellate courts of this state where the facts are similar to the facts in the instant case. We find an expression in *English* v. *Olympic Auditorium, Inc., supra,* which bears on the subject. It is there said, at page 643:

"In many jurisdictions mechanics' liens have been held to attach, not only to the building, but also the estate or property of the lessor for improvements made by the lessee, which improvements, by the terms of the lease, are to belong or revert to the lessor, or are permanent in nature, becoming part of the realty and of benefit to the lessor. . . . [Citing cases.] These cases are based on the theory that since the lease contemplates the construction of a building which will enhance the value of the fee to the benefit of the lessor, the lessee must be deemed the statutory agent of the lessor for the purpose of the construction. In view of the nonresponsibility statute in this state, we do not feel justified in going that far and holding that the lien attaches to the land as well as to the building. We are of the opinion that, *at least where the building of the improvement is optional* with the lessee, the posting and filing

of the notice of nonresponsibility by the lessor relieved the land from the lien.'' (Italics ours.)

Under the facts before us we lean toward the rule above quoted, especially where the instrument creating the relationship is such that the transaction establishes, in effect, that the lessee is but an agent of the owner in causing the improvements to be made to the owner's property, where the making of the improvements is *not optional* with the lessee, and the lessee is *obligated,* as a condition or covenant of the lease, to make the improvements, and where a breach of the condition or covenant returns the property to the owner greatly enhanced in value and the owner promises to repay to the lessee the estimated cost of the major portion of the improvements out of future rents. We will therefore consider the entire transaction in the light of this rule.

For some period of time the Yosts had been making some endeavor to have the theatre repaired or improved. They had secured figures on cost of remodeling. To them some of these figures appeared to be excessive. They contacted Mr. Kaplan, who later endeavored to secure some finances to make the necessary improvements. Some of the parties believed that the cost would not exceed $7,500, and all believed it would not be in excess of $10,000. The lease was entered into with the provision that the lessee was *obligated,* as a condition of the lease, to make the improvements and pay for them; that out of the $350 per month rental money paid by the lessee, the lessor was to pay the lessee for the improvements to be made to his property, not to exceed $10,000. (This amount did not include the cost of the marquee.) It may be said that, in fact, the owner was simply borrowing the money (up to $10,000) from the lessee to make the improvements designated, agreeing to pay the lessee therefor at the rate of $100 per month, which amount was to be deducted from the rents. Under the lease, lessee was compelled to and did show the owner plans and specifications for his approval. He was obligated to furnish a statement of materials and labor supplied. The owner was on the property at frequent intervals discussing with lessee the advisability of the several improvements made and to be made. At some stage of the proceedings the owner suggested that one L. R. Wilson, a construction engineer (known to the owner and who had been employed by him in reconstruction work on a previous theatre) be employed

by lessee, at lessee's expense, as superintendent of the construction. A supplemental agreement was then signed and as one of the covenants of the agreement lessee was obligated to employ Wilson as such and he was to give "lessor such information regarding costs and progress of said alterations, repairs and improvements, as lessor may from time to time request or require."

Each agreement contained a provision that nothing therein contained should be construed so as to impose any responsibility or liability on lessor for labor or material furnished in making the alterations. The facts in this case further show that lessee was unable to secure a satisfactory bond, running to the owner, to secure the payment of labor and material furnished. Against the advice of his counsel, the owner agreed to and did accept $1,000 in cash in lieu of such bond and signed a written agreement to the effect that if the repairs were made as agreed upon and the lessee paid all bills incurred, the $1,000 would be returned to the lessee after the time for filing improvements had expired. Otherwise, lessor would retain the $1,000 as liquidated damages.

The evidence further shows that the owner, on written agreement, allowed lessee, with the approval of the owner, to trade in all old seats and other equipment in the theatre toward other new seats and new equipment purchased by lessee. It was agreed, however, that at a later date, lessee was to pay owner the trade-in value at the rate of $50 per month. Lessee was obligated to execute a chattel mortgage on all new fixtures in favor of the owner, for the purpose of securing the monies due under the lease and the conditions and covenants therein contained.

The agreement then provided that if default be made by the lessee in the performance of any of the covenants or agreements to be performed by him, lessor might declare the term ended and lessee agreed to surrender the premises to lessor immediately.

It was further agreed that in the event the lease be canceled or terminated by the lessor or for any cause, before payments to be made by lessor to lessee from rentals to amortize the cost of alterations, etc., the lessee forfeited all rights to further payment from the lessor.

During the course of the trial, the question was raised

whether the lessee was, under the written agreements, an agent of the defendant Yost. The trial judge orally commented: "I don't think that I could find that the lessee was the agent of the owner . . . that under the lease to make the owner a contracting owner it would have to be through some trace of agency. Those were the facts in the Olympic case and the court refused to give a lien upon the land and building, but only upon the building." It should be here noted, from a statement of the facts in the English case, page 634,—the lessee was *authorized* to construct an auditorium building (italics ours), not *obligated* to construct it. Here, the trial court made no written finding directly holding that the lessee was or was not the agent of the owner. The findings merely set forth a copy of the lease, the addenda, and recited the facts above mentioned. It is only by inference that the trial court found that the lessee was not the agent of the owner because, under the findings, the owner, had the lessee been his agent, would not have been entitled to have the *land* exempted from the mechanics' and materialmen's lien. The whole property would have been subject thereto. A participating owner, even though acting through his agent, is not entitled to relieve his property from such liens by filing a nonresponsibility notice. (*Western Lumber & Mill Co.* v. *Merchants' Amusement Co.,* 13 Cal.App. 4 [108 P. 891]; *Hines* v. *Miller,* 122 Cal. 517 [55 P. 401].)

 Ordinarily, where there is conflicting evidence on the question whether a lessee is agent of the owner, the question becomes one of fact and not of law. In the instant case, it was the construction of the written lease, addenda, and other undisputed writings, which the court was called upon to construe as to their legal effect. The question presented was therefore one of law whether the terms of the instruments construed constituted the lessee the owner's agent for the purposes therein set forth. (*Cain* v. *Whiston,* 58 Cal.App.2d 738 [137 P.2d 479]; Code Civ. Proc., § 2102; *Estate of Thomson,* 165 Cal. 290 [131 P. 1045]; *Shelley* v. *Byers,* 73 Cal.App. 44 [238 P. 177]; *People* v. *Marsicano,* 57 Cal.App.2d 591 [135 P.2d 16]; *Gardner* v. *San Gabriel Valley Bank,* 7 Cal.App. 106 [93 P. 900].) We are convinced that, by their terms, the lessee was obligated to make the alterations and improvements as a condition to the effectiveness of the lease. The

lessee's right to cause the improvements to be made was not optional with the lessee. The contemplated project for the improvement and repair of the theatre was more in the form of a joint venture between the owner and the lessee.

Defendant Yost cannot, on this appeal, claim prejudice because the trial court ordered the lien to operate against the building only when it should have been held to have been a lien against the entire property.

In *Ah Louis* v. *Harwood*, 140 Cal. 500 [74 P. 41], it was said that an agreement with the lessee or conditional purchaser that improvements must be at his cost and that the lessor or seller will not be liable for labor and materials, will not alone satisfy the statute or protect the land from the lien. To the same effect is *Pacific Sash & Door Co.* v. *Bumiller*, 162 Cal. 664 [124 P. 230, 41 L.R.A.N.S. 296], where it is held that such contracts are good as between the owner and the lessee and serve to fix the liability as between them, but do not affect the rights of lien claimants. Under the cases cited and the rule herein adopted, the nonresponsibility notice of the owner was ineffectual.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 13, 1945. Carter, J., and Spence, J., voted for a hearing.