[Civ. No. 2566. Fifth Dist. May 28, 1976.]

LOS BANOS GRAVEL COMPANY et al., Plaintiffs and Appellants, v. VERNON FREEMAN, JR., et al., Defendants and Respondents.

## Counsel

Falasco & Galvin and Stephen P. Galvin for Plaintiffs and Appellants.

Downey, Brand, Seymour & Rohwer and J. Keith McKeag for Defendants and Respondents.

## Opinion

ZEFF, J.*—

### Statement of the Case

On January 31, 1973, plaintiffs filed a complaint for the value of goods and materials sold and delivered for use in the construction of a service station and restaurant and to enforce mechanics' liens on the land on which the service station and restaurant were constructed. Defendants Vernon Freeman, Jr., Betty J. Freeman, Elbon Corporation and Elbon Land Company, Inc. filed an answer admitting ownership of the real property against which the mechanics' liens had been recorded, denying the other material allegations of the complaint and asserting as an affirmative defense that these defendants had posted and recorded, as owners, a notice of nonresponsibility. The defendants Donald Bauer, Interstate Fuel, Interstate Fuel Corporation and Circle Vending Co. failed to answer and their defaults were entered. A court trial was held June 21, 1974, and judgment was entered in favor of the defendants-respondents and against those defendants who had defaulted. The plaintiffs are the appellants here and have filed a timely notice of appeal from that portion of the judgment in favor of the defendants-respondents.

### Statement of Facts

Respondents Vernon Freeman, Jr., Betty J. Freeman, Elbon Corporation and Elbon Land Co. each owned a one-half interest in a 220-acre

---

*Assigned by the Chairman of the Judicial Council.

parcel of land on the Fresno-Merced County line on Interstate 5 which is referred to on an unrecorded parcel map as Rawhide Springs, and which by an agreement between respondents is operated under the name "Rawhide Venture."

Vernon Freeman, who acted as representative of Rawhide Venture during the transactions in question, has been a licensed real estate broker for 16 years and has been involved in land investment and development in the Los Banos area for some 25 years.

A written lease (a "California Real Estate Association Standard Form"), dated June 13, 1972, was entered into between Rawhide Venture, represented by Vernon Freeman, and Circle Vending Co., represented by its president, Donald Bauer. The lease involved a square one-acre parcel of unimproved foothill farm land located next to the freeway. With respect to the leasehold term, use, improvement, occupancy, rent, option, covenants to perform and lessor's privilege of terminating, the lease contained the following provisions:

1. The term was for three years commencing June 13, 1972, and ending June 12, 1975.

2. The premises were to be used only for a service station and restaurant which could be of the "vending type."

3. If the lessee did not commence construction of the service station and restaurant within 120 days, the lessor was released from any obligation to perform.

4. The lease was designed as a "percentage lease," the rent to be one and one-half cents per gallon of all fuels sold, plus 4 percent of the gross income from all other products and services sold and rendered on the property with a minimum guarantee of $400 a month starting September 1, 1972.

5. All increases in county taxes resulting from improvements placed on the subject property were to be paid by the lessee.

6. If the lessee conformed to all of the conditions of the lease without any court action involving the lessor, the lessee was given the right of first refusal to match any lease or sale offer of the property acceptable to the lessor, and in addition the lessee was given an option to purchase the

subject property for the sum of $125,000 cash during the term of the lease.

7. In the event of a default by the lessee concerning any of the covenants or conditions of the lease, the lessor was given a right of reentry and a right to remove all persons from the property.

8. The lessee was not entitled to make alterations on the property without the written consent of the lessor.

9. The lessee's possession was not to be construed as conveying title thereto or ownership thereof and the lessee was required to pay any increase in fire and liability insurance rates resulting from his occupation of the premises.

In addition to the foregoing, the lease contained other standard provisions usually found in such printed forms.

Circle Vending Co. was apparently a Nevada corporation, now defunct, and at the time of the lease negotiations Vernon Freeman was aware that neither the corporation nor Mr. Bauer were financially sound, and for this reason drafted the lease to protect himself by providing that if the service station and the vending restaurant were not started within 120 days he would be released from all obligations. Freeman, apparently, did not expect that Bauer would be able to begin construction; however, Circle Vending Co. did enter into possession and began construction soon after the lease was signed.

On September 26, 1972, after returning from a hunting trip, Freeman first learned that construction had begun. He immediately visited the site and discovered that foundations had been laid, concrete poured, and that fuel tanks were already in the ground. Surprised that Circle Vending had been able to start construction, Freeman made inquiry to determine whether the fuel tanks had been paid for and learned that they had. On October 5, (the answer and the findings of fact refer to the date "October 4") Freeman posted a notice of nonresponsibility on the property and recorded the notice in the Merced County Recorder's office on October 6, 1972.

Each of the plaintiffs-appellants had supplied services and materials to Donald Bauer and Circle Vending Co. in varying amounts. On or about October 27, 1972, each of the appellants except T. Falasco, Inc. served

defendants with preliminary 20-day pre-lien notices, and on November 24, 1972, each of the appellants filed claims of lien on the property for the value of the materials and services.

## ISSUES

### I

*Were Respondents "Participating Owners" in the Construction Such as to Preclude Them From Exempting the Property From Mechanics' Liens Through Compliance With the Notice of Nonresponsibility Statute?*

### II

*Was the Posted Notice of Nonresponsibility Invalid and Ineffectual Because It Was Not Verified as Required by the Statute?*

### III

*Were Appellants Required to Serve Respondents With Preliminary Lien Notices?*

### I

A determination by this court with respect to issue I that the respondents were "participating owners" would mean that respondents would not be entitled to exempt the property from the mechanics' liens, despite compliance with the statutes relating to notice of nonresponsibility. The resolution of this issue against the respondents would also be dispositive of the issues framed under II and III.

The trial court in its findings of fact and conclusions of law made no express finding of fact with regard to the question of whether the respondents were participating owners, but did recite as a conclusion of law "the lease between defendants Freeman, et al., and Circle Vending Co., did not make defendants, Freeman, et al., participating owners with defendants, Bauer, et al., in the construction work carried on on the lease premises."

A preliminary question is presented with respect to the authority of an appellate court reviewing a lease agreement which is susceptible of more than one interpretation.

As stated in 6 Witkin, California Procedure (2d ed. 1971) Appeal, section 257, page 4248:

"The issue in a case may be the proper meaning to be given an instrument or other writing which is susceptible of more than one interpretation. Is the reviewing court bound to accept the construction given by the trial judge, or may it reverse the judgment by substituting its own construction which it deems more reasonable? The cases fall into three classes:

"(1) Where extrinsic evidence has been properly admitted as an aid to interpretation, and the evidence is in conflict.

"(2) Where no competent extrinsic evidence has been introduced, and the interpretation is derived solely from the terms of the instrument.

"(3) Where competent extrinsic evidence has been introduced, but it is not in conflict.

"The California decisions in the second and third classes were difficult to reconcile, but the uncertainty was resolved in the landmark case of *Parsons v. Bristol Dev. Co.* (1965) 62 C.2d 861, 44 C.R. 767, 402 P.2d 839."

It is the established rule that where the extrinsic evidence has been properly admitted and the evidence is in conflict any reasonable construction by the trial court will be upheld under the general rule of conflicting evidence.

We hold that the matter under consideration falls squarely within the third classification: "Where competent extrinsic evidence has been introduced, but it is not in conflict."

As was held by this court in *Davies Machinery Co.* v. *Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 23 [113 Cal.Rptr. 784]: "In reviewing a trial court's interpretation of a written instrument where no conflicting extrinsic evidence is received, an appellate court is not bound by the trial court's ruling but must give the writing its own independent

interpretation. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Estate of Shannon,* 231 Cal.App.2d 886, 890 [42 Cal.Rptr. 278]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 257-260, pp. 4248-4251.) The rationale for this rule is stated rhetorically in *Estate of Shannon*: '[W]here only the interpretation of written instruments is concerned, unaffected by extrinsic evidence, is not an appellate court, after studying the briefs on appeal, listening to the arguments of counsel, and thereafter engaging in a full discussion of the problem among the justices, in a more adequately informed position than is the trial judge and therefore better able to interpret the intent of the parties? . . . We conclude that in any case where extrinsic evidence is completely lacking or the quantum and quality thereof does not in reason place the trial judge in a better position to form an accurate interpretation of writings, or in other words, where interpretation is essentially a question of law rather than of fact, an appellate court is not bound by the determination of the trial court.' (231 Cal.App.2d at pp. 890-891.)"

Exercising such authority we review the lease agreement for the purpose of making an independent interpretation of its meaning and the effects of its provisions on the issue presented.

There are surprisingly few California decisions dealing specifically with the question under consideration.

Article XX, section 15 of the California Constitution establishes the right of materialmen and laborers, etc., to impose mechanics' liens upon property and the right of the Legislature to provide for the enforcement of such liens.

Civil Code section 3129 is the basic section imposing liability upon the landowner. It provides: "Every work of improvement constructed upon any land and all work or labor performed or materials furnished in connection therewith with the knowledge of the owner or of any person having or claiming any estate therein shall be held to have been constructed, performed, or furnished at the instance of such owner or person having or claiming any estate therein and such interest shall be subject to any lien recorded under this chapter unless such owner or person having or claiming any estate therein shall give a notice of nonresponsibility pursuant to section 3094."

Section 3094 of the Civil Code (added by Stats. 1969, ch. 1362, p. 2752, operative Jan. 1, 1971) provides in pertinent part:

" 'Notice of nonresponsibility' means a written notice, signed and verified by a person owning or claiming an interest in the site who has not caused the work of improvement to be performed . . .

"    .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Within 10 days after the person claiming the benefits of nonresponsibility has obtained knowledge of the work of improvement, the notice provided for in this section shall be posted in some conspicuous place on the site. Within the same 10-day period provided for the posting of the notice, the notice shall be recorded in the office of the county recorder of the county in which the site or some part thereof is located."

Thus, an owner with knowledge of construction may avoid such claims of liens by exempting his property through recording and posting of a notice of nonresponsibility, the requirements for which are set forth in Civil Code section 3094. However, an owner who has authorized construction, either by himself or through an agent cannot escape liability despite the filing of a notice of nonresponsibility. (*Ott Hardware Co.* v. *Yost* (1945) 69 Cal.App.2d 593 [159 P.2d 663]; see also Civ. Code §§ 3110, 3129.) In expressing this latter rule, the phrase "participating owner" is sometimes used. (*Hayward Lbr. & Inv. Co.* v. *Ford* (1944) 64 Cal.App.2d 346, 351 [148 P.2d 689].) In *Western etc. Co.* v. *Merchants' etc. Co.* (1910) 13 Cal.App. 4 [108 P. 891] a lessee corporation contracted to have a building constructed upon leased property and the court concluded that if the evidence showed that the owner of the property had organized and controlled the lessee corporation and acted through it, such would be sufficient to sustain a finding that the corporation acted as the owner's agent so as to preclude the owner from escaping liability for mechanics' liens upon the land by filing a notice of nonresponsibility under Code of Civil Procedure section 1192 (a predecessor statute of § 3129). (*Id.,* at p. 11.)

In *English* v. *Olympic Auditorium, Inc.* (1933) 217 Cal. 631 [20 P.2d 946, 87 A.L.R. 1281], the owner of property leased it to individuals who assigned the lease to a corporation. The lease authorized the lessee to construct an auditorium upon the premises at the sole cost of the lessee. The lease also provided that the lessee would have no right to remove any of the improvements and that any mechanics' liens would not affect

the rights of the lessors in the building. The lessors filed and posted a notice of nonresponsibility and the auditorium was constructed. Subsequently, the lessee failed to make the rental payments and eventually the lease was forfeited and the lessors retook possession of the premises. The court held that the fact the lease had been forfeited did not affect the validity of the mechanic's lien which had been attached to the building. Destruction of the leasehold could not destroy the lien. (*Id.,* at p. 640.) However, as to any lien on the land, the court held that the fact a lease contemplates construction of a building which will enhance the value of the lessors' fee is not sufficient to deem the lessee the statutory agent of the lessors for purposes of construction, at least where the construction of the building *is optional* with the lessee. Therefore, the lessors could escape a lien on the land itself through posting and recording a notice of nonresponsibility. (*Id.,* at p. 643.) In some situations which may be distinguished, the courts have refused to impose mechanics' liens where the owners have complied with the notice of nonresponsibility requirements. (*American Transit Mix Co.* v. *Weber* (1951) 106 Cal.App.2d 74 [234 P.2d 732], *Hayward Lbr. & Inv. Co.* v. *Ford, supra,* 64 Cal.App.2d 346, *McDowell* v. *Perry* (1935) 9 Cal.App.2d 555 [51 P.2d 117].)

We are mindful that in the case at bench we are concerned only with claims of lien as to the land and not the improvements.

The appellant here relies heavily upon *'Ott Hardware Co.* v. *Yost, supra,* 69 Cal.App.2d 593 [159 P.2d 663], wherein the lessors owned property upon which was located an old theater building which had not been in use for a number of years. The lessors entered into a lease the object of which was the remodeling of the building as a motion picture theater. As described by the court, the lease contained the following terms:

". . . the term of the lease shall be for ten years at $350 per month; that the parties agree that certain alterations are to be made; that plans and specifications therefor shall be presented to and approved by lessors; that lessees shall furnish a bond for faithful performance and cost of labor and materials used therein; lessors agree to pay lessees $100 per month from rentals for actual cost of alterations up to $10,000; that lessees agree to furnish lessors a statement of material and labor supplied as the work progresses; lessees agree that the cost of labor and material shall be fully paid by them at least five days prior to the time for filing any lien therefor; that lessees shall not have the right to remove any improvements made by them at the expiration of or termination of the lease; that

the lease shall remain in escrow until the improvements are completed and paid for.

"An addenda to this lease, dated October 26, 1940, recites that $1,000 shall be paid by lessees to lessors and in consideration thereof lessors waive the provisions of the lease requiring lessees to furnish a bond for faithful performance and payment of labor and material." (*Id.,* at pp. 594-595.)

In addition, the lower court found that: ". . . at the date of the execution of the lease and addenda thereto, the [owners] knew that the [lessee] was contemplating substantial improvements and repairs to the theatre building; that no repairs of any character had been placed in the building for many years preceding the execution of the lease; that in many instances the building did not comply with the fire laws and regulations of the city of Santa Ana; that the [owners] *would not have entered* into the lease unless the lessees named therein *had promised to substantially* modernize the building; that the [owners] had knowledge of the fact that the plaintiffs in the above entitled action had furnished material for use in and about the building situated on their real property described and that substantial amounts of money were due, owing and unpaid to plaintiffs; that the building occupies the whole of the described real property; that without the furnishing of the labor and materials aforesaid the 'buildings had no use whatsoever.' " (*Id.,* at p. 596.)

The court indicated approval of a rule that irrespective of a notice of nonresponsibility, a mechanic's lien attaches to the real property of the lessor for improvements made by the lessee which by the terms of the lease revert to the lessor, are mandatory, permanent in nature, and benefit the lessor. (*Id.,* at pp. 598-599.) At the same time, however, the court pointed out that its approval "especially" applied: ". . . where the instrument creating the relationship is such that the transaction establishes, in effect, that the lessee is but an agent of the owner in causing the improvements to be made to the owner's property, where the making of the improvements is *not optional* with the lessee, and the lessee is *obligated,* as a condition or covenant of the lease, to make the improvements, and where a breach of the condition or covenant returns the property to the owner greatly enhanced in value and the owner promises to repay to the lessee the estimated cost of the major portion of the improvements out of future rents." (*Id.,* at p. 599.)

The court concluded that the lien attached to the real property stating: "We are convinced that, by their terms, the lessee was obligated to make the alterations and improvements as a condition to the effectiveness of the lease. The lessee's right to cause the improvements to be made was not optional with the lessee. The contemplated project for the improvement and repair of the theatre was more in the form of a joint venture between the owner and the lessee." (*Id.,* at pp. 601-602.)

In *Utley* v. *Wear* (1960) 333 S.W.2d 787, a case before a Missouri Court of Appeal, the owner of an old office building leased it for a term of five years, with an option to renew for an additional five years at an arbitrated rent. The lease stated that it was granted for the purpose of operating a cocktail bar and dinner house; that the lessee was required to do all remodeling and repairs necessary for such operation; that the lessee was required to spend not less than a designated amount for certain alterations; that this amount was made part of the consideration for the lease; and that the lessee was required to submit to the lessor paid bills. (*Id.,* at p. 789.)

The court first noted that it was often stated that: ". . . where the lease *requires or obligates* the tenant to construct improvements *which substantially enhance the value of the freehold,* then the tenant is usually considered as having been authorized as agent of the owner for the purpose of subjecting the premises to a lien." (*Id.,* at p. 792.)

The court continued: "[W]here the premises are let for a *specific purpose* and where the nature of the premises is such that the purpose *cannot be accomplished* except by the making of substantial improvements to the freehold, then the tenant is, by implication, *required* to make such improvements. He has no other option, and hence is the landlord's (implied) agent to the extent of subjecting the property to a lien, this upon the theory that the landowner contemplated the necessity and required that such necessity be met. [Citations.]" (*Id.,* p. 793. Italics by the court.)

In *Newport* v. *Hedges* (1962) 358 S.W.2d 441, another decision by the same Missouri court, a vacant lot was leased for a term of ten years with a five-year renewal option. The lessee was also given an option to purchase the land at a designated price within the first seven years of the lease. The lease stated: "It is agreed that the premises are to be used by Lessee for the operation thereof of a Dog 'n Suds Drive-In restaurant building." The building was to be constructed by the lessee at his cost in

accordance with plans and specifications to be approved by the landowner. (*Id.*, at p. 443.)

The court stated: "We cannot escape the conclusion that the parties not only contemplated and intended but also contracted for the operation of a certain business to be conducted on the then unimproved vacant lot; that the construction of the building, if indeed not required by the contract, was required in fact for the operation of such business. Nor can we escape the conclusion that the owner intended to (and probably did) accomplish substantial benefit to both his present and future interest in what was then vacant property. In view of the repeated assertions by the courts to the effect that the mechanics' lien laws are to be construed liberally, our conclusion is that the lessees became by implication of law the agent of the owners whereby the owners' property might become bound for a lien." (*Id.*, at p. 446.)

In the case at bench, as in *Ott Hardware Co.* v. *Yost, supra,* it is very clear that the lease provisions compelled the construction of the service station and the restaurant and that the obligation of the lessee was not optional but mandatory. The agreement for the leasing had no viability unless the preliminary condition for construction was complied with; the construction to begin within 120 days or the respondent-lessor would be relieved from any and all liability. As was stated in *Newport* v. *Hedges, supra,* 358 S.W.2d at page 446, "We cannot escape the conclusion that the parties not only contemplated and intended but also contracted for the operation of a certain business to be conducted on the then unimproved vacant lot; that the construction of the building, if indeed not required by the contract, was required in fact for the operation of such business."

There are substantial reasons to support a finding by this court that the respondent is to be considered to have been acting as a "participating owner" based on an interpretation of the provisions contained in the lease agreement. While the lease agreement under consideration involved a one-acre parcel of land, it comprised but a small portion of a substantially larger acreage owned by the respondent all of which was unimproved agricultural land immediately adjacent to a freeway and remotely removed from any town or village. The respondent, a sophisticated and highly experienced commercial land developer, prepared a lease which compelled the lessee to construct a service station and restaurant facility, closely limiting the time within which such improve-

ments must be accomplished. Respondent as lessor unqualifiedly restricted the use of the premises to a service station and restaurant and it may reasonably be assumed that the purpose of such closely restricted use was to avoid competing and conflicting with other commercial uses contemplated by the respondent with regard to his remaining acreage, and for the apparent reason that the particular premises under consideration were but a segment of an overall commercial complex to be created on the adjoining acreage owned by the respondent. The respondent wrote the lease to provide for a percentage rental arrangement, the effect of which is to give to him an on-going interest in the continuing operation of the premises. While the respondent gave to the lessee a right of first refusal to match any lease or sale acceptable to the respondent, this did not in any manner diminish the interest of the respondent. The provision is of no benefit to the lessee unless and until the respondent has made a determination to accept or reject either an offer of lease or of sale and the discretion as to whether to accept or reject is wholly with the respondent.

While respondent gave the lessee an option to buy during the term of the lease, it is significant that the option price was a very substantial figure. The lessee was obliged to pay taxes on the improvements which inures to the benefit of the lessor. At the expiration of the three-year term of the lease (an extremely short term considering the substantial improvements required to be constructed), the lessee was required: "to surrender possession of such premises in as good condition as reasonable use and wear thereof will permit."

The suggestion of appellant that the respondent "was simply speculating for the commercial development of the site at Rawhide Springs, without cost, through the calculated device of a lease" is persuasive. We hold that a reasonable interpretation of the lease agreement leads to the conclusion that respondent was a participating owner and as such, is not entitled to claim the benefit of the nonresponsibility statute to exempt his property from the claims of lien of the appellant suppliers of materials and services.

While our determination as to the first issue is dispositive of the remaining two issues and a consideration and discussion of such issues are not necessary to this decision, some discussion of issue II is warranted.

## II

The requirements of Civil Code section 3094, prior to its operative date on January 1, 1971, were contained in former Code of Civil Procedure section 1183.1 (Stats. 1951, ch. 1159, p. 2942). That section required that an owner with knowledge of construction, in order to escape liability for a mechanic's lien: ". . . within 10 days after he shall have obtained knowledge of such construction, alteration or repair or work or labor, give notice that he will not be responsible for the same by posting a notice in writing to that effect in some conspicuous place upon the property, and shall also, within the same period, file for record a *verified* copy of said notice in the office of the county recorder of the said county in which said property or some part thereof is situated." (Italics added.)

It is quite clear that under the section as it formerly read, only the copy of the notice that was to be recorded had to be verified. The posted notice did not.

The present section 3094, added by Stats. 1969, ch. 1362, p. 2752, operative January 1, 1971, provides in pertinent part:

" 'Notice of nonresponsibility' means a written notice, signed and *verified* by a person owning or claiming an interest in the site who has not caused the work of improvement to be performed. . .

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Within 10 days after the person claiming the benefits of nonresponsibility has obtained knowledge of the work of improvement, the notice provided for in this section shall be posted in some conspicuous place on the site. Within the same 10-day period provided for the posting of the notice, the notice shall be recorded in the office of the county recorder of the county in which the site or some part thereof is located." (Italics added.)

In the presentation of this case in the trial court it was conceded by the parties that under section 3094 the Legislature had effected a change in the requirements for notice, and the case was litigated upon the premise that both the posted and recorded notices were required to be verified. While we may speculate as to the intention of the Legislature, whether

they intended merely to reorganize the statute, or whether they simply intended to do some "housekeeping" for the purpose of presenting the statute in a more suitable arrangement, this question was not presented to the trial court.

It was the conceded premise that both the posted notice and the recorded notice were required to be verified, and the court found upon substantial evidence that both the posted notice and the recorded notice were in fact verified, and this conclusion will not be disturbed. It should be noted that historically it has always been required that statutes such as that under consideration be strictly construed. (*Hayward Lbr. & Inv. Co.* v. *Ross* (1939) 32 Cal.App.2d 455 [90 P.2d 135]; *Oil Tool Exchange, Inc.* v. *Hasson* (1935) 4 Cal.App.2d 544 [41 P.2d 211].) It has also been held that if an owner posts a defective notice, he will remain liable even if the person attempting to oppose the mechanic's lien had actual knowledge of the notice (*Pasqualetti* v. *Hilson* (1919) 43 Cal.App. 718 [185 P. 693]). ■ With substantial reservation concerning the intention of the Legislature in recasting the statute, we hold that section 3094 of the Civil Code by its clear wording requires that both the posted and filed notices be verified and that the statute must be strictly construed to require such dual verification.

### III

In view of our holding under issue I, the preliminary lien notice requirements as prescribed by Civil Code section 3097, which requires a preliminary 20-day notice on private work, are obviated and unnecessary by virtue of the express exception in the statute as related to lien claims for persons furnishing labor or materials to an owner. This proposition is conceded by all parties in interest.

The judgment is reversed with directions to the trial court to enter judgment in favor of the appellants in accord with their respective claims of lien. Appellants to recover costs on appeal.

Franson, Acting P. J., and Goldstein, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.