[Civ. No. 18469. Fourth Dist., Div. One. Jan. 21, 1980.]

WILLIAM LEROY BAKER, Plaintiff and
Respondent, v.
NATHAN M. HUBBARD, Defendant, Cross-complainant
and Appellant,
JAMES L. ADAMS, Defendant, Cross-defendant
and Respondent.

COUNSEL

Ludecke, Andreos, McGrath & Denton and George P. Andreos for Defendant, Cross-complainant and Appellant.

No appearance for Plaintiff and Respondent.

Dorman and Dorman, Wallace D. Dorman, McLean & McLean and Donald F. McLean, Jr., for Defendant, Cross-defendant and Respondent.

OPINION

**WORK, J.**\*—Nathan M. Hubbard, a general building contractor (Contractor), appeals a judgment on his cross-complaint denying him the right to foreclose on a mechanic's lien, against Adams, a landowner (Owner) upon whose improved real property Contractor made certain modifications pursuant to a contract with a lessee in possession. We affirm the judgment.

Factually, Owner purchased a 50-year-old building and its site which was then licensed as a convalescent hospital. After one month of unsuccessful self-operation as an intermediate-care facility, Owner entered into a five-year lease with Hartley (Lessee) who assumed control July 1, 1972, and continued to operate the facility as an intermediate-care center although the lease was not specifically restricted to this use. Owner, and later Lessee, relied primarily on Medi-Cal patients as the major source of clientele and revenue.

The lease was prepared by Owner in a cut-and-paste method from various samples he obtained. It reads in part as follows: "5 [the second one]. *Use of the Premises*: The premises are let to Tenant for use as a nursing retirement-convalescent home/hospital with related operations. Tenant shall not use or permit the premises, or any part thereof, to be used for any other purpose, without first securing Landlord's written consent.

---

\*Assigned by the Chairperson of the Judicial Council.

"7. *Compliance with Laws*: Tenant shall not commit or suffer to be committed any waste upon said premises; nor shall Lessee use or suffer to be used said premises, or any part thereof, for any purpose or use in violation of any laws or ordinances, or regulations of any governmental authority, or in any manner whatsoever which might constitute a nuisance, or which might create any unreasonable annoyance to the owners or occupants of adjoining or neighboring properties. Tenant shall, at its own cost and expense, conform in every respect to all laws, statutes, ordinances and regulations now in force or that may be hereafter enacted, affecting the use or occupancy of said premises; and Tenant shall indemnify and save harmless Landlord from any penalties, damages or imposed for any violation of any such law, statue [*sic*], ordinance or regulation, whether occasioned by neglect, omission, willful act or otherwise of Tenant, or any other person in said premises.

"8. *Alterations*: The Tenant shall not make any alterations or additions whatsoever to the premises or the equipment contained therein without the prior written consent of Landlord, and any additions to or alterations of said premises, except movable furniture and trade fixtures, shall become at once a part of the realty and belong to Landlord. Tenant shall not remove nor cause to be removed any trade fixtures or equipment from the premises without prior written consent of Landlord. Tenant shall keep the property free and clear from any liens arising out of any work performed, materials furnished or obligations incurred by Tenant. Tenant agrees to pay for any damage to or loss of leased property resulting from negligent acts or omissions of Tenant, including guests, but excluding reasonable wear and tear.

" . . . . . . . . . . . . . .

"10. *Repairs*: Tenant shall, at its sole cost, keep and maintain said premises and appurtenances, and every part thereof, in good and sanitary order, condition and repair, hereby waiving all rights to make repairs at the expense of Landlord as provided in Section 1942 of the Civil Code of the State of California, and all rights provided by Section 1941 of said Civil Code. Tenant shall, at its sole cost, keep and maintain all fixed and moveable equipment upon the premises in good repair. The only exception to the aforementioned repairs shall be that Landlord agrees to allocate the sum of $400.00 lump sum toward the cost of sandblasting and painting of the entire exterior of the hospital building. This sandblasting and painting is to be completed within one year from the date of the signing of this lease and the workmanship

must be done in a reasonable manner with both the workmanship and color of paint subject to Landlord's approval in writing."

In April 1975, Lessee was notified by the State Fire Marshal his participation in the Medi-Cal program would be terminated unless the leased building was modified in certain respects. An estimate of $65,000 was obtained. (We have augmented the appeal record with the lease and notices of deficiencies, Cal. Rules of Court, rule 12(a).)

Lessee informed Owner of this problem and requested a reduction in rent or a contribution of one-half of the alteration expenses. Lessee did not request cancellation of his lease.

Owner refused to reduce rent or contribute to the expenses. He pointed to the age and overall structural condition of the building which would still be substandard after the proposed alterations were made. He pointed out the unlikelihood of any enhancement in value of the real property as a result of the proposed changes.

Owner suggested Lessee either limit his business to providing intermediate care for non-Medi-Cal recipients (an impractical choice) or lower the rating of the facility to a board and care center. The latter alternative required no modification to the building but would result in a reduction in gross income per bed. However, it would also allow a reduction in overhead by requiring less nursing supervision. Whether such a use would reduce Lessee's net income is not clear. Lessee rejected each alternative but suggested none of his own.

Without Owner's knowledge, Lessee obtained architectural plans and contracted with Contractor for the work.

On October 24, 1975, Owner first learned of the Lessee's activities by observing construction materials lying on the property.

The same day Owner, apparently addicted to legal self-help, purchased a Wolcott's form of a notice of nonresponsibility, prepared it, posted it and recorded a copy promptly. The form did not contain a place for verification and neither the posted or recorded notice was verified. (Civ. Code, § 3094.)

For reasons not made clear in the record, neither Contractor nor any subcontractor received actual notice of Owner's claim of nonliability. In

any event, Owner discovered the notice posted in October was not in place as of January 6, 1976. He posted and recorded another on that date, this one being untimely.

A series of lawsuits was instituted by various subcontractors for money judgment against Contractor and foreclosure of Lessee's and Owner's interests in the real property.

Contractor cross-complained against Lessee and Owner for indemnification as to those sums for which he was liable to subcontractors, foreclosure of a mechanic's lien against the interests of both Lessee and Owner, and for money damages from Lessee.

The various actions were consolidated, resulting in judgments in favor of the subcontractors against Contractor and judgment in favor of Contractor against Lessee on his cross-complaint. Contractor's mechanic's lien was foreclosed on the real property only to the extent of Lessee's interest.

Contractor claims he is entitled to foreclosure on Owner's interest on either of two theories.

 First, he contends the lack of verification to the October notice of nonresponsibility was such a defect as to render it void.

Addressing this threshold question, we hold a lack of verification to an otherwise sufficient notice of nonresponsibility will not deprive a landowner who, except for verification, fully complies with the statutory requirements of the protection offered by the nonresponsibility section. (Civ. Code, § 3094.)

In order to avoid foreclosure of a mechanic's lien as to his interest in the real property, Owner must fulfill the requirements of Civil Code section 3094. Civil Code section 3129 permits a lien in the absence of a proper and timely notice.

Unless the lack of verification makes the posted and recorded notices of October 24, 1975, insufficient, Owner is entitled to the protection of Civil Code section 3094 and the judgment is correct.

The only purpose of a verification is to assure good faith in the averments or statements of a declarant. (*Sheeley* v. *City of Santa Clara* (1963) 215 Cal.App.2d 83, 85 [30 Cal.Rptr. 121].)

The mechanic's lien laws were revised and restated effective January 1, 1971. (Stats. 1969, ch. 1362, § 2, p. 2752.) A provision in the act stated it was not to be construed to constitute a change in the existing law but merely declaratory thereof.

There was no requirement for a notice of nonresponsibility to be verified until this revision. (Previous provisions were in Code Civ. Proc., § 1183.1.)

We see no possible additional protection to a lien claimant from the mere verification of a document the sole purpose of which is notice. The good faith of the declarant is irrelevant.

In a discussion unrelated to and unnecessary for its decision, the court in *Los Banos Gravel Co.* v. *Freeman* (1976) 58 Cal.App.3d 785 [130 Cal.Rptr. 180], theorized Civil Code section 3094 must be strictly construed to require verification of both the posted and recorded notices. In reaching this conclusion, the court relied on a history of decisions requiring strict construction of lien laws to diminish the ability of a landowner to avoid a lien placed by a claimant whom the laws are designed to protect. (*Id.*, at p. 800.) (We note hereafter the egregious fact situation with which the *Los Banos* court was faced.)

■ Generally, mechanic's lien laws are to be liberally construed to protect lien claimants (*Trout* v. *Siegel* (1927) 202 Cal. 706, 710 [262 P. 320]), and strictly construed against the landowner. (*Pasqualetti* v. *Hilson* (1919) 43 Cal.App. 718 [185 P. 693], hg. den.)

However, lien laws are not to be applied blindly without regard to the rights of property owners.

In *Borchers Bros.* v. *Buckeye Incubator Co.* (1963) 59 Cal.2d 234, 239 [28 Cal.Rptr. 697, 379 P.2d 1], our Supreme Court approved the language of *Alta Bldg. Material Co.* v. *Cameron* (1962) 202 Cal. App.2d 299, 303-305 [20 Cal.Rptr. 713], as follows: "While the essential purpose of the mechanics' lien statutes is to protect those who have performed labor or furnished material towards the improvement of the property of another [citation], inherent in this concept is a recognition

also of the rights of the owner of the benefited property. It has been stated that the lien laws are for the protection of property owners as well as lien claimants [citation] and that our laws relating to mechanics' liens result from the desire of the Legislature to adjust the respective rights of lien claimants with those of the owners of property improved by their labor and material."

The Supreme Court recognized liens often result from activities of third parties over which the owner has no control and of which he may be unaware.

In light of the above expression by this state's highest court, we find no public policy which requires us to disregard the Legislature's express disclaimer of any intent to change the preexisting law when it restated and moved the mechanic's lien statutes from the Code of Civil Procedure to the Civil Code.

We find no inference the Legislature meant to impose any greater handicap on an innocent landowner by defining the notice as one being verified. No more so do we detect any possible additional protection to the lien claimant by such verification.

Where, as here, the parties are equally blameless, no prejudice arises from the lack of verification and the landowner is not unjustly enriched, failure to verify a notice of nonresponsibility, in and of itself, is not such failure of compliance with the statute so as to deprive a landowner of its protection.

Second, Contractor urges Owner was a participating party to the contract between Contractor and Lessee because the lease itself mandated the changes included in the contract. Therefore, it is contended Lessee acted as Owner's agent in making the contract. This, in turn, allegedly prohibits Owner from insulating his interest in the real property from lien, whether or not there was proper compliance with Civil Code section 3094.

Contractor does not claim Owner was privy to the contract negotiations or later ratified the contract. He relies solely on the language in the lease set forth above.

Even if the notice is defective, mere failure to post and record a notice of nonresponsibility does not create a privity of contract between

Contractor and Owner. (*Frank Curran Lbr. Co.* v. *Eleven Co.* (1969) 271 Cal.App.2d 175, 186 [76 Cal.Rptr. 753].)

■ Where the terms of a lease impose a mandatory duty upon a lessee to make designated substantial alterations to existing structures, or to make other substantial improvements to the realty without which the specific purpose for which the lease is made cannot be accomplished, he is by implication required to make these improvements.

An owner who by lease compels a lessee to substantially enhance the value of his real property or be in default of its terms, is deemed to be a participant with his lessee in contracts designed to make those improvements. (*Los Banos Gravel Co.* v. *Freeman, supra,* 58 Cal.App.3d 785, and cases cited therein, pp. 794-797.)

A mechanic's lien attaches to an owner's interest in the above cases, whether or not a notice is filed. (*Ott Hardward Co.* v. *Yost* (1945) 69 Cal.App.2d 593 [159 P.2d 663].)

The above rule has been applied where the leased property would not have been leased by the owner except for the lessee's promise to either substantially alter existing structures or build new ones, the improvements are permanent in nature, benefit the lessor and failure to make such improvements would be a breach of the lease terms.

*Ott Hardward Co.* v. *Yost, supra,* 69 Cal.App.2d 593, found the rule especially applicable where the making of improvements was not optional with lessee, a breach of the lease covenant would return the property to owner greatly enhanced in value, and the owner promised to repay lessee a major portion of the improvements out of future rents.

■ We concur in the holding of *Los Banos Gravel Co.* v. *Freeman, supra,* 58 Cal.App.3d 785, and cases cited by it, but find none of the factual requirements are met in this case.

Here the alterations made were never discussed nor even contemplated at the time the lease was signed. Owner specifically declined to participate in the expense of modifying the building because of its age and basic structural inadequacies which would not be improved by the work contemplated. Owner objected to putting $65,000 into a building when no enhancement in value could be anticipated. In fact, any increase in value as a result of the work was de minimis.

Far from treating the lease as one mandating Lessee to make these alterations, Owner suggested alternatives which Lessee rejected.

Although special finding number 2 states Lessee was "required pursuant to his lease with [Owner] to make the improvements on the property," there is no support in the record for such a finding if "required" is used to describe a mandatory, nonoptional duty imposed by Owner.

If the trial court did intend such an interpretation, it is inconsistent with special finding number 3 that Lessee was not acting as Owner's agent when he entered into the contract. Since the latter special finding is consistent with the judgment, we presume it to correctly reflect the court's position. Finding no extrinsic evidence in the record, we resolve this issue by interpreting the lease itself. (*Davies Machinery Co.* v. *Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18 [113 Cal.Rptr. 784].)

Paragraph 8 prohibits Lessee from making "any alterations or additions whatsoever" to the premises or the equipment without first obtaining written permission of the landlord.

On the other hand, Contractor relies on language in that part of paragraph 7 which reads "Tenant shall, at its own cost and expense, conform in every respect to all laws, statutes, ordinances and regulations now in force or that may hereafter be enacted, affecting the use or occupancy of said premises; . . . "

Paragraph 7, read in its entirety, relates Lessee's obligation not to conduct businesses which are illegal under the general statutory enactments and his duty to operate so as not to create nuisance, annoy neighbors and otherwise disturb the peace.

The provisions of paragraph 5 do not limit Lessee's use of the premises solely to those purposes requiring certification for Medi-Cal patients.

We are further satisfied Lessee was aware of the very real possibility the facility would be found unfit by Medi-Cal at the time he entered into the lease. Lessee had been administering various convalescent and intermediate-care facilities since 1963 and was familiar with Medi-Cal requirements. He knew the construction of the building was nonconforming in that it contained no elevator, a defect which was waived.

Also he was advised by the state at the time he entered the lease the yard area was insufficient, but got a waiver for that defect.

Lessee knew his annual renewal for Medi-Cal required passing inspections or getting waivers of defects. He knew also Medi-Cal could withdraw waivers at any time. In fact, even after the remodeling, the hallways are not in compliance, and certain doors are too narrow. As he stated at trial, "They waivered an awful lot of things."

The general language of paragraphs 5 and 7 does not, standing alone, supply the necessary ingredients to make Owner a participating party as a matter of law.

The alterations contracted for, without the consent of Owner, fall squarely within those mentioned in paragraph 8. That paragraph prohibits, rather than mandates, Lessee's activities without express written approval of Owner.

The "improvements" specifically involved in these lawsuits are not mandated by the lease. Any contrary interpretation implied by special finding number 2 is not reasonably supported by the evidence.

The real property was not significantly enhanced in value by these alterations, if at all. Owner is not a participating party under the doctrine discussed in *Los Banos Gravel Co.* v. *Freeman, supra,* 58 Cal.App.3d 785. The finding Lessee was not acting as an agent of Owner when he entered into the contract is amply supported by the record.

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 20, 1980.