[No. A099318. First Dist., Div. Five. Feb. 14, 2003.]

HOWARD S. WRIGHT CONSTRUCTION CO., Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
BBIC INVESTORS, LLC, Real Party in Interest.

**COUNSEL**

McQueen & Ashman, James A. McQueen and Jean C. Wilcox for Petitioner.

No appearance for Respondent.

Bartko, Zankel, Tarrant & Miller, Glenn P. Zwang, Michael D. Abraham and Jae S. Yi for Real Party in Interest.

## OPINION

**JONES, P. J.**—This writ proceeding arises from a lawsuit brought by petitioner Howard S. Wright Construction Co. (HWCC) to foreclose its mechanic's lien in the amount of $2.4 million on property owned by real party in interest, BBIC Investors, LLC (BBIC). BBIC had leased the property to 360networks, and the construction work performed by petitioner consisted of improvements to convert the property from a warehouse into an adequate facility for 360network's telecommunications business. The question posed to us is whether the notice of nonresponsibility recorded and posted by BBIC insulates the property from the lien for construction work undertaken by 360networks, the now bankrupt tenant.

### PROCEDURAL HISTORY

Soon after petitioner filed its complaint, it also recorded a notice of lis pendens. BBIC then moved to expunge the notice of lis pendens on the grounds that BBIC had no privity with petitioner, that the construction work was performed pursuant to a contract between petitioner and 360networks, and that BBIC had previously recorded a notice of nonresponsibility. Simultaneously, BBIC moved to "remove" the mechanic's lien on the same grounds.

In opposition to those motions, petitioner relied upon the "participating owner" doctrine, which makes the property owner subject to a mechanic's lien, despite a notice of nonresponsibility, if the owner participates in the contract to make the improvements. The trial court concluded, however, that petitioner failed to prove BBIC's participation in the lessee's improvements, and the court granted both the motion to expunge the lis pendens and the motion to remove the mechanic's lien. Petitioner now seeks review of the trial court's decision on both motions. We issued an order to show cause and a temporary stay of the trial court's order removing the mechanic's lien.

### DISCUSSION

#### I.  *Judicial Review*

##### A.  *Writ Relief*

A notice of lis pendens may be expunged if the trial court finds that the plaintiff-claimant "has not established by a preponderance of the evidence

the probable validity of the real property claim." (Code Civ. Proc., § 405.32.)[1] An order expunging a notice of lis pendens is not appealable, but it may be reviewed on a petition for writ of mandate. (Code Civ. Proc., § 405.39.)

The order "removing" the mechanic's lien is in a different posture. A motion to remove a mechanic's lien is recognized as a device that allows the property owner to obtain speedy relief from an unjustified lien or a lien of an unjustified amount without waiting for trial on the action to foreclose the lien. (*Lambert v. Superior Court* (1991) 228 Cal.App.3d 383 [279 Cal.Rptr. 32].) The inquiry upon such motion is likewise limited to the "probable validity" of the lien. (*Id.* at p. 387.) However, unlike the grant of a motion to expunge the notice of lis pendens, the grant of a motion to remove a mechanic's lien is essentially a judgment on the underlying foreclosure action that no lien exists—a judgment that, upon recordation, removes the lien from the public records.[2] (Civ. Code, § 3148.)[3] And, that judgment is a final, appealable judgment for which writ relief would ordinarily be denied.

However, we have concluded that in the interests of judicial economy we will undertake a review of the judgment in the foreclosure action along with the order expunging the notice of lis pendens. Both the motion to expunge and the motion to remove raised the identical question of the probable validity of petitioner's lien, and the trial court's order disposed

---

[1] The notice may also be expunged on the ground that the underlying complaint does not contain a real property claim. (Code Civ. Proc., § 405.31.) That basis is not available here, as petitioner's complaint alleged a mechanic's lien on the property. By statute, a mechanic's lienholder who sues to foreclose the lien may record a notice of lis pendens. (Civ. Code, § 3146.)

[2] As to a *nonparty* transferee of the property, an order expunging a notice of lis pendens would likewise operate as a judgment that no lien exists. Upon recordation, an order expunging the notice of lis pendens allows a nonparty purchaser to take title to the property absolutely free and clear of any judgment that might be obtained in the pending action, even though the purchaser had actual knowledge of the pendency of the action. (Code Civ. Proc., § 405.61.) Hence, in an action to foreclose a mechanic's lien, an order of expungement by implication extinguishes the lien as to a nonparty transferee. (*Knapp Development & Design v. Pal-Mal Properties, Ltd.* (1987) 195 Cal.App.3d 786, 789-791 [240 Cal.Rptr. 920]; cf. *Federal Deposit Ins. Corp. v. Charlton* (1993) 17 Cal.App.4th 1066, 1069-1070 [21 Cal.Rptr.2d 686] [expungement of notice of lis pendens did not extinguish underlying judgment lien].) Here, however, BBIC the property owner is the party defendant to the action for foreclosure of the mechanic's lien.

[3] Civil Code section 3148 states: "In all cases the dismissal of an action to foreclose the lien (unless it is expressly stated that the same is without prejudice) or a judgment rendered therein that no lien exists shall be equivalent to the cancellation and removal from the record of such lien." Thus, a mechanic's lien is removed from the public records upon recordation of a judgment specifying that the mechanic does not have a lien. (10 Miller & Starr, Cal. Real Estate (3d ed. 2000) Mechanics' Liens, § 28:72, p. 227.)

of the two motions simultaneously. A separate review on appeal of the order to remove the lien would be unnecessarily duplicative. Moreover, the apparent legislative purpose for making an order expunging a notice of lis pendens reviewable only by writ was to expedite the review process so as not to tie up title conveyances. If we were to wait for an appeal to be perfected on the order removing the lien so as to decide the two matters together, the delay would defeat the purpose of speedy writ review.

## B. *Standard of Review*

Our threshold task is to establish the appropriate standard of review. As already indicated, BBIC's motion to expunge the notice of lis pendens and motion to remove the mechanic's lien both raise the probable validity of HWCC's mechanic's lien. The "probable validity" standard was added to the lis pendens statute in 1992 to override the decision in *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 527 [174 Cal.Rptr. 694, 629 P.2d 495], and other cases holding that the trial court on a motion to expunge may not conduct a "minitrial" on the merits of the case. The statute changed the law to require a judicial evaluation of the merits of the underlying claim. (See Code Com., 14 West's Ann. Code Civ. Proc. (2003 supp.) foll. § 405.32, p. 225.)[4] Unlike other motions, the burden is on the party opposing the motion to expunge—i.e., the claimant-plaintiff—to establish the probable validity of the underlying claim.[5] (Code Civ. Proc., § 405.30.) The claimant-plaintiff must establish the probable validity of the claim by a preponderance of the evidence. (Code Civ. Proc., § 405.32.)

The Legislature's intent, reflected in the State Bar report (see fn. 4, *ante*), was to make the standard on a motion to expunge a notice of lis pendens equivalent to the probable validity standard applicable under the attachment law (Code Civ. Proc., § 484.090) and other provisions for pretrial judicial evaluation (e.g., Code Civ. Proc., § 512.060 [writ of possession]; Code Civ. Proc., § 564 [appointment of receiver]; Corp. Code, § 800, subd. (c)(1) [shareholder derivative action]). (Code Com., 14 West's Ann. Code Civ. Proc., *supra*, foll. § 405.32, p. 225.) That is, the plaintiff must "at least establish a prima facie case. If the defendant makes an appearance, the court must then consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation."

---

[4] The Legislature's intent is reflected in the State Bar report that was relied upon by the Legislature and is reproduced with the applicable code sections. (See *BGJ Associates v. Superior Court* (1999) 75 Cal.App.4th 952, 955-956 [89 Cal.Rptr.2d 693]; *Hunting World, Inc. v. Superior Court* (1994) 22 Cal.App.4th 67, 71-72 [26 Cal.Rptr.2d 923].)

[5] "Probable validity" for this purpose means "that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." (Code Civ. Proc., § 405.3.)

320

(Cal. Law Revision Com. com., 15A West's Ann. Code Civ. Proc. (1979 ed.) foll. § 481.190, p. 15.)

We have been cited to no case law, nor has our research disclosed any, regarding the standard to be applied on appellate review of an expungement motion. We take note that the State Bar report analogizes the "probable validity" standard in the lis pendens statute to the evaluation of the plaintiff's "likelihood of success" for issuance of a preliminary injunction. (See Code Com., 14 West's Ann. Code Civ. Proc., *supra*, foll. § 405.32, p. 225.) Accordingly, in determining our standard of review, we draw upon the standards applicable to the grant or denial of a preliminary injunction. ■ The decision to grant or deny a preliminary injunction rests in the sound discretion of the trial court. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].) The trial court's interlocutory decision on the likelihood that the plaintiff will prevail at trial reflects nothing more than the court's evaluation of the controversy based on the record before it at the time of its ruling. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109 [60 Cal.Rptr.2d 277, 929 P.2d 596].) On review of the trial court's ruling, the appellate court does not reweigh conflicting evidence or determine the credibility of witnesses. The reviewing court's task is simply to ensure that the trial court's factual determinations are supported by substantial evidence. (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 624-625 [43 Cal.Rptr.2d 774]; *Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1820 [39 Cal.Rptr.2d 887].) If, however, the material facts are not disputed, then the issue becomes a question of law for our de novo review. (*California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 302 [98 Cal.Rptr.2d 302]; *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1403 [74 Cal.Rptr.2d 712].)

■ In the present case, the material facts were not in conflict and were principally derived from the terms of the written lease between BBIC and 360networks. The trial court's ruling that HWCC failed to prove the probable validity of its mechanic's lien was a decision that the evidence was insufficient to establish that BBIC was a participating owner. We independently review the effect and significance of the undisputed evidence and draw our own legal conclusions. ■ As we explain in the discussion that follows, we conclude that HWCC established the probable validity of its lien and that the trial court erred in granting BBIC's motions to expunge the notice of lis pendens and to remove the mechanic's lien. Accordingly, we will remand for further proceedings on the action to foreclose the lien.

## II. *The Participating Owner Doctrine*

Mechanics, materialmen, contractors, and the like have an automatic lien on property upon which they have bestowed labor or furnished material as long as the work was done "at the instance of the owner" or the owner's agent. (Cal. Const., art. XIV, § 3; Civ. Code, § 3110.) When the property is subject to a lease and the lessee orders the work to be done on the leased premises without the lessor's knowledge, then the lien attaches only to the lessee's leasehold interest. (*English v. Olympic Auditorium, Inc.* (1933) 217 Cal. 631, 642 [20 P.2d 946, 87 A.L.R. 1281].) However, improvements constructed with the owner's knowledge are deemed to be at the instance of the owner—unless the owner gives notice of nonresponsibility. (Civ. Code, § 3129.)

By statute, a notice of nonresponsibility is of no effect when the landowner "caused the work of improvement to be performed . . . ." (Civ. Code, § 3094.) The case law has held that the tenant may be treated as an agent of the landowner (so that the landowner is deemed to have caused the work to be performed) when the tenant is *required* by the lease to make the improvements. (*Ott Hardware Co. v. Yost* (1945) 69 Cal.App.2d 593, 597-599 [159 P.2d 663] (*Ott*); *Los Banos Gravel Co. v. Freeman* (1976) 58 Cal.App.3d 785, 793-797 [130 Cal.Rptr. 180] (*Los Banos Gravel*).) On the other hand, when the improvements are *optional* with the tenant, then the notice of nonresponsibility relieves the land from the mechanic's lien (and the lien attaches only to the tenant's improvements). (*English v. Olympic Auditorium, Inc., supra,* 217 Cal. at pp. 642-643.)

As the authors of a pertinent law review article have observed, "the notice of nonresponsibility shield is not bulletproof. If the property owner 'participates' through lease provisions by requiring the lessee to make improvements to the leasehold, the owner cannot shield its property interest." (Diepenbrock et al., *Lessor Liability for Mechanics' Liens Under the California Participating Owner Doctrine* (1992) 24 Pacific L.J. 83, 97, fn. omitted (hereafter Diepenbrock).) "California has been a leader in holding lessors liable for the unpaid debts incurred by lessees for the construction of leasehold improvements." (Diepenbrock, p. 86.)

In *Ott,* the lease contemplated renovation of an obsolete movie theater. The lease acknowledged that alterations were to be made, and the lease required the lessor's approval of the plans and specifications. The lease also provided for the lessor's monthly contributions to the costs of the alterations.

The appellate court held that the lessor's notice of nonresponsibility was ineffective to exempt the property from the mechanic's lien. The court concluded as a matter of law, from its review of the written lease and other undisputed writings, that "the lessee was obligated to make the alterations and improvements as a condition to the effectiveness of the lease. The lessee's right to cause the improvements to be made was not optional with the lessee. The contemplated project for the improvement and repair of the theater was more in the form of a joint venture between the owner and the lessee." (*Ott, supra,* 69 Cal.App.2d at pp. 601-602.)

In *Los Banos Gravel, supra,* 58 Cal.App.3d 785, the tenants leased a parcel of unimproved property near the freeway, but the lease provided that the premises were to be used only for a service station and restaurant, and the lease required construction to begin within 120 days. The rent was based on a percentage of the gross income from the products and services sold on the property. The court concluded that, "as in *Ott Hardware Co. v. Yost, supra,* it is very clear that the lease provisions compelled the construction of the service station and the restaurant and that the obligation of the lessee was not optional but mandatory. The agreement for the leasing had no viability unless the preliminary condition for construction was complied with: the construction to begin within 120 days or the respondent-lessor would be relieved from any and all liability. As was stated in *Newport v. Hedges* [(Mo.Ct.App. 1962)] 358 S.W.2d [441,] 446: 'We cannot escape the conclusion that the parties not only contemplated and intended but also contracted for the operation of a certain business to be conducted on the then unimproved vacant lot; that the construction of the building, if indeed not required by the contract, was required in fact for the operation of such business.' " (*Los Banos Gravel, supra,* 58 Cal.App.3d at p. 797.)

In the *Newport* case—the case relied upon in *Los Banos Gravel*—the Missouri Court of Appeals reasoned not only—as quoted above—that the landowner intended the construction of the restaurant building on his lot, but also that the owner "intended to (and probably did) accomplish substantial benefit to both his present and future interest in what was then vacant property." (*Newport v. Hedges, supra,* 358 S.W.2d at p. 446.)

In the present case, the evidence leads to the same conclusion. Prior to the lease between BBIC and 360networks, the premises consisted of a warehouse. Yet, by the terms of the lease, the property was to be used by 360networks during the 15-year term only for telecommunications purposes. In particular, "manufacturing, warehousing or inventory distribution" were

prohibited. It is undisputed that the parties contemplated and intended that the premises would be outfitted as a "point of presence" site as part of 360network's global fiber optics network. The "initial alterations" identified in a written supplement to the lease included bringing telecommunication cabling to the building, increasing the electrical supply, adding more air conditioning, and adding a backup generator. The evidence indicates that making the improvements was not an option for the tenant, that without such alterations to the premises the lease for a telecommunications business on the site would have had no viability.

Moreover, the lease required 360networks to obtain BBIC's approval of the plans and specifications of its initial alterations. As a result of BBIC's retained control over the construction, BBIC representatives met regularly with HWCC and insisted on certain (minor) modifications of the construction work. Pursuant to the lease, BBIC collected an administrative fee of $5,000 per month for its efforts in overseeing the construction.[6]

BBIC obviously stood to gain from the improvements to its property in that an outmoded warehouse was converted to technologically advanced space. As a result, BBIC was able to charge rent substantially higher per square foot for the improved space than that charged to its other tenants. And the lease contemplated that BBIC would enjoy the advantage of the improvements for a 15-year term.

As it turned out, unfortunately, the economic boom in the telecommunications industry was short lived, and 360networks went into bankruptcy. HWCC stopped work before the improvements were completed, and BBIC was left with a partially renovated space. BBIC then incurred the expense of demolishing some of the work and completing other parts to make the space tenantable. Those post hoc events, however, are irrelevant to an analysis of the participating owner doctrine. Our focus must be confined to the parties' intentions at the time the improvements were undertaken. As one court put it, "[I]n respect to whether the improvements actually enhance the value of

---

[6]BBIC argues that the various lease provisions giving BBIC oversight powers—(1) requiring BBIC's approval of the plans, (2) requiring BBIC's approval of the contractor, and (3) assessing an administrative fee for supervising the construction work—were designed simply to ensure that BBIC could protect the interests of the other tenants in its multitenant building. Yet nothing in that argument negates the showing that BBIC, as property owner, retained control.

The authors of the law review article cited above have cautioned that commercial property owners who become involved in controlling the timing and scope of construction work by their lessees act at their peril. (Diepenbrock, *supra,* 24 Pacific L.J. at p. 90.)

the premises as events finally work out, it is a question of what the owner can be said to have intended *at the time the premises were improved.* That his judgment was bad, or that he was disappointed by later events, is of no moment." (*Utley v. Wear* (Mo.Ct.App. 1960) 333 S.W.2d 787, 792, italics added & omitted.) In the present case, the future of the telecommunications industry looked bright at the time the lease was entered into, and the conversion of the warehouse into a "point of presence" site held the potential for enhancing the value of the property.

In opposition to HWCC's petition, BBIC argues that the participating owner doctrine does not apply because the improvements were not mandatory. BBIC emphasizes that the lease permitted other uses of the premises with the consent of BBIC, "which consent shall not be unreasonably withheld." Yet, BBIC's contention is refuted by the following provision in the lease: "Tenant shall not be required to make structural changes to the Premises unless they arise or are required because of or in connection with Tenant's specific use of the Premises, or the type of business conducted by Tenant in the Premises, or Tenant's Alterations, or Tenant's acts or omissions." The qualifying phrase "unless they . . . are required because of . . . Tenant's specific use of the Premises" indicates that the alterations were in fact required before 360networks could make use of the space.

BBIC also argues that the contemplated alterations were not truly permanent and therefore did not qualify as a "work of improvement" for which a mechanic's lien can be filed. (Civ. Code, § 3110.) BBIC points to a provision in the lease that during the lease term 360networks could remove and/or replace its Specialty Equipment, generator, HVAC, or rooftop equipment. Another provision required 360networks to remove its telecommunication lines, conduit, and cabling upon BBIC's request at the termination of the lease. And, in the lease supplement (containing BBIC's approval of the alterations), 360networks agreed to remove its Specialty Equipment (including the conduit, generator, and HVAC equipment) at the end of the lease.

We are not persuaded by BBIC's arguments. The lease called for the construction of a "mechanical infrastructure" and installation of conduit. One of the elements of that infrastructure was a 2,000 kilowatt generator installed outside the building on its own concrete slab along with the related switchgear and electrical conduits. Another element was structural steel framing for new rooftop HVAC equipment and the attendant duct work and secondary water piping. Installation of the fiber optics cable required concrete vaults beneath the street and connections to the building. The evidence

showed that the alterations were not of a temporary nature. (Cf. *Moses v. Pacific Building Co.* (1922) 58 Cal.App. 90, 94-95 [207 P. 946] [no mechanic's lien on electrical conduits attached to studs and rafters in open framework building for temporary use of lessee].)[7]

In any event, despite the lease provisions allowing BBIC to demand removal of the equipment at the end of the lease term, the lease obviously contemplated that the improvements would remain in place during the 15-year lease term so that 360networks could operate its telecommunications business, and BBIC would thereby be able to collect enhanced rents. The undisputed evidence supports HWCC's claim that the construction work qualifies as an improvement to the property to which a mechanic's lien attaches.

The trial court ruled that HWCC failed to prove BBIC was a participating owner: "Plaintiff has not shown any of the following: (a) that the tenant acted as Defendant's agent; (b) that the lease obligated the tenant to make any particular improvements; (c) that the tenant was to be repaid from rental income for the costs of the improvements; or (d) that the tenant's rental payments were based on a percentage of the income from the business for which construction of the improvements at issue was required. [¶] Although it is true that the lease provides that Defendant's consent was required prior to any improvements being made to the premises, the Court finds that such is not sufficient to treat Defendant as a participating owner under the circumstances of this case."

We agree with HWCC that the trial court's reasoning was flawed. First, the evidence that HWCC never viewed 360networks as the agent for BBIC was irrelevant. For purposes of the participating owner doctrine, the tenant need not act as the landlord's actual or ostensible agent; the tenant becomes the agent of the landlord "by implication of law" when the lease requires the tenant to make the improvements. (*Newport v. Hedges, supra,* 358 S.W.2d at p. 446; see *Ott, supra,* 69 Cal.App.2d at p. 60.) In another Missouri case cited in *Los Banos Gravel,* the court explained: "[W]here the premises are let for a specific purpose and where the nature of the premises is such that the purpose cannot be accomplished except by the making of substantial improvements to the freehold, then the tenant is, by implication, required to

---

[7]*Howard A. Deason & Co. v. Costa Tierra Ltd.* (1969) 2 Cal.App.3d 742, 757 [83 Cal.Rptr. 105], cited by BBIC, is completely distinguishable. There the court held a mechanic's lien did not attach to the landscape contractor's services for mowing and watering the lawn, although it did attach to the services for installing the plants.

make such improvements. He has no other option, and hence he is the landlord's (implied) agent to the extent of subjecting the property to a lien, this upon the theory that the landowner contemplated the necessity and required that such necessity be met." (*Utley v. Wear, supra,* 333 S.W.2d at p. 793, italics omitted.)

Second, as already discussed, the fact that the lease did not require any particular improvements is not determinative. The question is whether the improvements were a practical necessity for the contemplated use of the premises. (*Los Banos Gravel, supra,* 58 Cal.App.3d at p. 797.) The evidence supports HWCC's claim that renovating the premises was required to allow 360networks to conduct its fiber optics business and to allow BBIC to obtain the agreed-upon rent.

The absence of any cost-sharing or profit-sharing arrangement between BBIC and 360networks is certainly a part of the picture. In *Ott,* the lessor contributed to the costs of the renovations, and in *Los Banos Gravel,* the rent was based on a percentage of sales from the newly constructed service station and restaurant. However, we see nothing in those cases making the existence of such arrangements determinative of whether the lease implicitly required the improvements to be made. In the present case, the financial entanglement existed in a different form in that BBIC stood to benefit from the higher rent made possible by the improvements.

In sum, we conclude from the undisputed evidence presented on the motions that HWCC is likely to succeed in its claim that BBIC participated in the construction work through the lease provisions requiring 360networks to make the improvements. We emphasize that our decision is limited to the pretrial question whether HWCC established the probable validity of its lien. It is for the trial court to determine, after hearing additional evidence at trial and resolving any conflicts that may appear in the evidence, whether BBIC was actually a participating owner whose property is subject to HWCC's mechanic's lien despite the notice of nonresponsibility.

DISPOSITION

Let a peremptory writ of mandate issue commanding the superior court to vacate its orders removing the mechanic's lien and expunging the notice of

lis pendens and to conduct further proceedings on the action for foreclosure of a mechanic's lien.

Stevens, J., and Gemello, J., concurred.

A petition for a rehearing was denied March 17, 2003, and the petition of real party in interest for review by the Supreme Court was denied June 11, 2003.