Filed 12/18/15  St. Mark Baptist Church of Pittsburg v. St. Mark at Bethel Missionary Baptist Church CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ST. MARK BAPTIST CHURCH OF PITTSBURG,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SAINT MARK AT BETHEL MISSIONARY BAPTIST CHURCH,<br><br>    Defendant and Respondent. | A139811<br><br>(Contra Costa County Super. Ct. No. C12-02083) |

In this dispute over the control of church property, the trial court resolved two pretrial motions against plaintiff and appellant St. Mark Baptist Church of Pittsburg (St. Mark Pittsburg).  The court first granted a motion by defendant Saint Mark at Bethel Missionary Baptist Church (St. Mark at Bethel) to expunge a lis pendens plaintiff had recorded against the property.  It secondly denied a motion by plaintiff for a preliminary injunction prohibiting sale of the property.  Both rulings are grounded on the trial court's determination that plaintiff failed to establish that the individuals purporting to act on its behalf had the authority to do so.  We conclude this determination is supported by substantial evidence and the trial court did not abuse its discretion in granting the motion to expunge or in denying preliminary injunctive relief.

BACKGROUND

More than 50 years ago, St. Mark Pittsburg acquired property at 908 Carpino Avenue.  In the 1980's, some church members left and founded New Bethel Missionary

1

Baptist Church of Pittsburg (New Bethel). New Bethel acquired its own property at 360 Central Avenue.

Around 2010, the two churches discussed merging and once again becoming a single church. St. Mark Pittsburg was represented in these discussions by, among others, Lawrence Thomas, LaShon Craig, Julius Jones, and Bertha Gosha. New Bethel was represented by, among others, Frances Greene and Kimberly Payton.

A June 14, 2010, agreement states the two churches "agree to merge and become a new separate church organization" and specifies the details of the merger would be "developed and agreed on jointly at a later date." Undescribed "personal funds" loaned to New Bethel were to be repaid, and Pastor McNab, from St. Mark Pittsburg, would be pastor of the new church. Representatives of St. Mark Pittsburg, including Thomas, Jones, and Gosha, and of New Bethel, including Greene and Payton, signed the agreement, as did McNab.

The new church operated from the Central Avenue location and did not use the Carpino Avenue property. It took the name St. Mark at Bethel and filed bylaws with the Secretary of State on July 29, 2010. According to Payton (originally from New Bethel), she and the other remaining trustees of St. Mark Pittsburg and New Bethel became the trustees of the new church. A new bank account was opened. But debts were kept in the names of the original church corporations while waiting for the new church to exist long enough to qualify to assume the loans. Pastor McNab was paid by the new church.

Four months after the merger agreement, in October 2010, the new church obtained a loan for $166,000 secured by the Carpino Avenue property. Larry Thomas and Julius Jones (both originally with St. Mark Pittsburg and who had participated in the merger discussions and signed the June 2010 agreement to merge) signed for the loan for the new church. Payton (formerly a member of New Bethel) avers she and the other trustees of the new church, including Thomas and Jones, decided to obtain the loan. The proceeds were put toward renovations of the Central Avenue Property.

2

In April 2011, the encumbered Carpino Avenue property was leased to Chapel Churches.  Paragraph 30 of the lease grants Chapel an option to purchase the property for fair market value within 24 months and a first right of refusal if it remains a tenant thereafter.  If purchased, one-quarter of the rent paid will be credited towards the price.  Frances Greene (originally from New Bethel) signed the lease.  The new church thereafter collected the rent.

Although the new, unified church acted as such for some time, disagreement arose about whether the merger remained a good idea and whether McNab should be retained as pastor, given accusations he was threatening toward church staff and over-protective of his salary despite the serious financial debts of the new church.  According to Payton (originally from New Bethel), the trustees of the new church voted to terminate McNab on July 8, 2012.

On July 23, there was an "open meeting to vote whether it was feasible to remain" at 360 Central or whether St. Mark Pittsburg should "return" to Carpino Avenue.  The contentious meeting was apparently led by two outside "moderators" who adhered to an agenda of unknown origin and who had no clear understanding of which bylaws governed the meeting.  In fact, it is unclear from the meeting transcript which faction, those supporting McNab or those supporting the unified church, called the meeting or which church bylaws was governing.[1]  Members of both constituent churches were present.  McNab was also present and treated, at least by some attendees, as if he had not been fired.

What actually happened at the meeting is also unclear.  According to the meeting transcript, a "majority" voted to "leave" the unified church and to make plans to return to Carpino Avenue.  Who voted and whether they were originally from St. Mark Pittsburg

---

[1] The meeting "transcript" was prepared from a tape recording of the meeting and declared accurate by McNab.

or New Bethel is unknown. Payton (originally with New Bethel) disputes the transcript, asserts no vote was ever taken, and that McNab, the former pastor of St. Mark Pittsburg and dismissed pastor of the unified church, simply declared he had decided to depart for Carpino Avenue. Chantal Evans (originally from St. Mark Pittsburg) claims the decision to part company was made by the unified church, not by the St. Mark Pittsburg/McNab group.

The following day, McNab wrote a letter resigning as pastor of the unified church and stating he was returning to Carpino Avenue to once again lead the St. Mark Pittsburg congregation. He could not, however, return to Carpino Avenue since it was being leased, so he installed the new St. Mark Pittsburg group in a Seventh Day Adventist church building. According to Payton (originally from New Bethel and who remained with St. Mark at Bethel), perhaps less than five, and no more than 10, individuals followed McNab and left the unified church. Evans (originally from St. Mark Pittsburg and who left with McNab), admitted the group that left the unified church did not include all the former members of St. Mark Pittsburg.

The following month, in August 2012, the McNab/St. Mark Pittsburg group and St. Mark at Bethel submitted a flurry of conflicting documents to the Secretary of State, each hoping to stake out its claim to the St. Mark Pittsburg entity and, by extension, the Carpino Avenue property.

The McNab/St. Mark Pittsburg group filed ostensibly updated officer information and articles of incorporation for St. Mark Pittsburg, naming McNab as CEO, Tiara Jones as secretary, and Evans as CFO. None of these individuals had been previously authorized to act on behalf of St. Mark Pittsburg. Nor were they ever authorized to act on behalf of the unified church. Rather, they were named as officers of St. Mark Pittsburg solely by the handful of individuals that followed McNab when he left the unified church.

St. Mark at Bethel, in turn, submitted its own officer information statement purportedly on behalf of St. Mark Pittsburg, listing different officers, namely Thomas

4

(formerly with St. Mark Pittsburg and who had participated in the merger discussions, signed the June 2010 agreement to merge, and signed for the loan for the new church) as CEO, Payton (formerly with New Bethel) as secretary, and Greene (formerly with New Bethel and who had signed the lease with Chapel Churches) as CFO. St Mark at Bethel also filed certifications of the merger and a new "Agreement of Merger" signed by purported representatives of St. Mark Pittsburg (Thomas as President and Bertha Gosha as secretary) and purported representatives of St. Mark at Bethel (Greene and LaShon Craig).[2]

The lawyer representing the McNab/St. Mark Pittsburg group then contacted the Secretary of State's office, which, in light of the conflicting filings and technical shortcomings in the merger submissions, rejected the merger documents for the time being.

The same month, St. Mark at Bethel recorded a grant deed evidencing a transfer for $1 of the Carpino Avenue property to it from St. Mark Pittsburg, executed by Thomas and Craig.

During this time frame, the lawyer representing the McNab/St.Mark Pittsburg group also contacted Chapel Churches and told it to stop sending rent to St. Mark at Bethel. The lawyer representing St. Mark at Bethel, in turn, insisted rent checks should continue to be sent to the unified church. There is apparently no dispute that St. Mark at Bethel properly collected the rent prior to the departure of McNab and his followers.

The McNab/St.Mark Pittsburg group never made any payments on the $166,000 loan taken out against the Carpino Avenue property.

McNab and his followers, invoking the name of St. Mark Pittsburg, eventually sued St. Mark at Bethel, Chapel Churches, and others. The verified first amended

---

[2] Gosha's signature of the merger documents is somewhat peculiar, because she therein claimed to be secretary of St. Mark Pittsburg, while St. Mark at Bethel's documentation had identified Payton as secretary.

complaint alleged 17 causes of action, which, at bottom, sought a ruling that St. Mark Pittsburg, not the unified church, had owned and continued to own the Carpino Avenue property.

The McNab/St.Mark Pittsburg group also filed a lis pendens on the Carpino Avenue property. St. Mark at Bethel moved to expunge it. The trial court, crediting St. Mark at Bethel's evidence over that of the McNab/St. Mark Pittsburg group, concluded the group failed to establish the probable validity of its real property claims and expunged the lis pendens.

The McNab/St. Mark Pittsburg group then moved for a TRO and preliminary injunction prohibiting sale of the Carpino Avenue property pending resolution of the litigation. The trial court denied the motion "in light of the court's ruling on" the "motion to expunge lis pendens."

The McNab/St. Mark Pittsburg group sought writ relief from the expungement order and appealed from the denial of its motion for a preliminary injunction. We summarily denied the writ petition on the ground the lis pendens ruling could be challenged in the pending appeal.[3]

## DISCUSSION

*Lis Pendens*

" 'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title to or right to possession of the real property described in the notice.' " (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647 (*Kirkeby*).) "A lis

---

[3] We deferred action on a request by the McNab/St. Mark Pittsburg group filed on September 18, 2014, to augment the record with four documents, which we deemed to be a request for judicial notice. We now deny that request because the documents are not relevant to our disposition. (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 418 ["a litigant must demonstrate that the matter as to which judicial notice is sought is both relevant to and helpful toward resolving the matters before this court"].) We also deny the request for judicial notice filed September 15, 2015.

6

pendens may be filed by any party in an action who asserts a 'real property claim,' " such as one affecting title to or possession of specific real property. (*Ibid.*, citing Code Civ. Proc. §§ 405.20, 405.4)[4] "Section 405.30 allows the property owner to remove an improperly recorded lis pendens by bringing a motion to expunge." (*Kirkeby*, at p. 647.)

"There are several statutory bases for expungement of a lis pendens . . . ." (*Kirkeby, supra*, 33 Cal.4th at p. 647.) First, a lis pendens shall be expunged if the plaintiff has not properly pleaded a real property claim. (*Ibid.*; § 405.31.) Second, a lis pendens shall be expunged if "the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." (§ 405.32; see also *Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 319 (*Howard*).) Unlike most other motions, the nonmoving plaintiff bears the burden of demonstrating the existence or probable validity of its claim. (*Kirkeby*, *supra*, 33 Cal.4th at p. 647.)

The trial court granted expungement on the ground the McNab/St. Mark Pittsburg group did not establish the probable validity of its real property claims. Because a determination of probable validity under section 405.32 is closely related to an interim determination of likelihood of success as part of the familiar preliminary injunction inquiry, "we draw upon the standards applicable to the grant or denial of a preliminary injunction" in reviewing an expungement order. (*Howard*, *supra*, 106 Cal.App.4th at p. 320.) We review issues of law de novo, and we review factual findings for substantial evidence. We do not reweigh conflicting evidence or reevaluate the trial court's determinations of witness credibility. (*Ibid.*)

While both parties focus much of their attention on whether the merger between St. Mark Pittsburg and New Bethel was ever actually completed, that is not the determinative issue. Even assuming St. Mark Pittsburg has remained a separate corporate

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

7

entity at all times, that means nothing if McNab and his followers are not the church's authorized leaders. Therefore, like the trial court, we view the pivotal question regarding the probable validity of plaintiff's real property claims as, first and foremost, whether McNab and his followers demonstrated they are the rightful leaders of St. Mark Pittsburg, with authority to sue on its behalf and block the sale of the Carpino Avenue property. If they lack such authority, regardless of the status of the merger, they have no chance of success in this lawsuit. (See *Anmaco, Inc. v. Bohlken* (1993) 13 Cal.App.4th 891, 898–900 [even a corporation president owning 50 percent of the corporate shares may not "institute litigation in the name of the corporation," thus summary judgment properly granted to defendant].)

The record contains substantial evidence supporting the trial court's determination that McNab and his followers are not the rightful leaders of St. Mark Pittsburg, regardless of the status of the merger.

To begin with, there is evidence establishing the ongoing, uncontested leadership, both before and after the asserted merger, of individuals who were formerly affiliated with St. Mark Pittsburg and who did not join the McNab breakaway group. (See *City of Venice v. Short Line Beach Land Co.* (1919) 180 Cal. 447, 453 [corporate authority "may be shown by evidence that the person does business for the corporation and on its behalf, as agent, with the knowledge and acquiescence of its directors or general manager, or by their direction"].) In the 2010 merger talks, for instance, St. Mark Pittsburg was represented by its then undisputed leaders Lawrence Thomas, LaShon Craig, Julius Jones, and Bertha Gosha. The written merger agreement was signed by Thomas, Jones, and Gosha. While McNabb also signed, he did so as pastor, not as an individual with governing authority of St. Mark Pittsburg. Later in 2010, Thomas and Jones executed the loan secured by the Carpino Avenue property. And after McNab and his followers left the new church, Thomas, Craig, and Gosha continued to sign documents in their capacity as leaders of St. Mark Pittsburg, for the benefit of the unified church.

While McNab, Tiara Jones and Chantal Evans later filed papers asserting they were the true officers of St. Mark Pittsburg, they were not chosen not by the full congregation of St. Mark Pittsburg, but by the small group that left the unified church with McNab. Evans did not know whether there was any kind of quorum at the meeting where she assertedly became an officer. She further conceded that Thomas and Julius Jones had been trustees of St. Mark Pittsburg prior to the merger and, to her knowledge, that status never changed during the unified operation of the churches.

Ultimately, there is no evidence as to how Evans or any other supposed officer or trustee could legitimately assume power over St. Mark Pittsburg church. For example, there are no meeting minutes, and the actions of the purported new church leaders have been hotly disputed. In conclusory declarations, Evans and other followers of McNab told the trial court they "currently" occupy positions of leadership in the church, but none addressed how or why his or her claim to such a position is procedurally or substantively legitimate under the church's governing law.

Thus, given the evidence before it, the trial court did not abuse its discretion in ruling St. Mark Pittsburg failed to show it will likely prevail on its real property claims and in granting St. Mark at Bethel's motion to expunge the lis pendens.

St. Mark Pittsburg's other arguments that the expungement order was improper also lack merit.

The trial court's tentative decision—which denied expungement—is, contrary to plaintiff's argument, irrelevant to our review. Such rulings are preliminary, not binding, and simply meant to guide the parties' oral arguments. (Cal. Rules of Court, rule 3.1590; *In re Marriage of Boblitt* (2014) 223 Cal.App.4th 1004, 1029; *Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175, fn. 4; *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 357 [a tentative decision "is not controlling and not appealable"].) Thus, there was nothing improper about the trial court changing its view of the case after issuing its tentative ruling.

9

The expungement order hinged on neutral principles of civil law. Thus, contrary to plaintiff's argument, it did not resolve "controversies over religious doctrine." Therefore, the order did not "establish" a church or inhibit its free exercise of religion in violation of the First Amendment. (*Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church* (1969) 393 U.S. 440, 449 ["Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property."]; *Kim v. True Church Members of Holy Hill Community Church* (2015) 236 Cal.App.4th 1435, 1446–1447 (*Kim*), citing *In re Episcopal Church Cases* (2009) 45 Cal.4th 467, 485.)

The mere fact the complaint alleged real property claims does not, contrary to plaintiff's argument, preclude expungement. A lis pendens may be expunged, of course, when a plaintiff fails to even state a real property claim. (§ 405.31.) But even when a real property claim is alleged, expungement is still proper if the plaintiff cannot show a probability of prevailing. (§ 405.32.) In other words, there are two alternative, independent grounds for a motion to expunge (*Kirkeby*, *supra*, 33 Cal.4th at p. 651), and the trial court properly entertained a motion on the latter ground.

Finally, contrary to plaintiff's argument, the trial court did not have to allow further discovery on whether the merger of the churches was ever complete. As we have discussed, that is not the determinative issue. Plaintiff also never asked for additional discovery and thus forfeited the issue. (*Kim*, *supra*, 236 Cal.App.4th at p. 1450; *Robbins v. Regents of University of California* (2005) 127 Cal.App.4th 653, 659.) In any case, the parties conducted discovery while the motion to expunge, and then while the motion for a preliminary injunction, was pending, and plaintiff submitted discovered material in its opposition to the motion to expunge.

### Preliminary Injunction

In determining whether to issue a preliminary injunction, a trial court considers: "(1) the likelihood the plaintiff will prevail on the merits of its case at trial, and (2) the

10

interim harm the plaintiff is likely to sustain if the injunction is denied as compared to the harm the defendant is likely to suffer if the court grants a preliminary injunction." (*Husain v. McDonald's Corp.* (2012) 205 Cal.App.4th 860, 866–867 (*Husain*).) The overarching question for an appellate court reviewing the denial of a preliminary injunction is whether the trial court committed a clear abuse of discretion. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 274 (*Model Schools*).) " 'Discretion is abused when a court exceeds the bounds of reason or contravenes *uncontradicted* evidence.' " (*Husain*, at p. 867.)

As noted in the previous section, whether a plaintiff is likely to prevail on a claim for preliminary injunctive relief is essentially the same question as whether a plaintiff's real property claim has "probable validity" under the lis pendens statutes. (*Howard*, *supra*, 106 Cal.App.4th 314, 319–320.) Both determinations are reviewed on appeal for abuse of discretion. (*Id.* at p. 320.)

In its opening brief, the McNab/St. Mark Pittsburg group challenged only the trial court's determination regarding the likelihood of success and said nothing about balancing the relative hardships. Indeed, in its reply brief, the group states: "If this Court finds . . . substantial evidence" the McNab/St. Mark Pittsburg group is not likely to succeed on its real property claims, "then this appeal ends here and the trial court's order may be affirmed." We agree. We also need not, and therefore do not, repeat our discussion on the likelihood of plaintiff's success on its claims. As we have discussed, the trial court's conclusion that McNab and his followers did not make a persuasive showing as to their claimed leadership and control of St. Mark Pittsburg is amply supported by the record.

For the first time in its reply brief, the McNab/St. Mark Pittsburg group takes issue with whether the trial court balanced the relative hardships. However, it is fundamental that "[a]n appellant's failure to raise an argument in the opening brief waives the issue on appeal." (*Telish v. California State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487,

fn. 4.)  Thus, " ' " 'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " ' " (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4; see also *Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 390, 399 [arguments made "for first time in . . . reply" are not "properly raised"].)  No such showing has been made here.  Accordingly, we do not address whether the trial court properly considered the balance of hardships.  (See *Model Schools*, *supra*, 227 Cal.App.4th at p. 275 [declining to consider relative hardships question when "all of defendants' arguments challenge [only] the trial court's finding that AIMS did not prove a probability of success on the merits"].)

## DISPOSITION

The trial court's orders expunging the lis pendens and denying injunctive relief are affirmed.  Respondent to recover costs on appeal.

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Dondero, J.