Filed 12/9/22  Tadevosyan v. Superior Court CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROZIK TADEVOSYAN,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>        Respondent;<br><br>SYLVIA ROSALES, as Trustee, etc.,<br><br>        Real Party in Interest. | B319714<br><br>(Los Angeles County Super. Ct. No. 21STCV20845) |

ORIGINAL PROCEEDINGS in mandate.  Stephen I. Goorvitch, Judge.  Petition granted.

Yu Mohandesi, Pavel Ekmekchyan; KP Law and Zareh A. Jaltorossian for Petitioner.

No appearance for Respondent.

Arturo Santana for Real Party in Interest.

# INTRODUCTION

In granting a motion to expunge a lis pendens, the trial court found that plaintiff Rozik Tadevosyan, who contracted to buy real property from real party in interest, trustee Sylvia Rosales, had not established the probable validity of a claim for specific performance. The court found the underlying purchase agreement—which failed to set a deadline for performance, stating only that the close of escrow would occur after March 1, 2014—was unenforceable as uncertain. We conclude the agreement was not uncertain. Where an agreement fails to specify a deadline for performance, a "reasonable time" for performance may be implied.

Without specifying the date of a reasonable time for performance here, the court determined that it had expired, thereby imposing a bar to the claim for specific performance. We conclude that the court conflated the expiration of the "reasonable time" for performance with the expiration of the time to file suit. A lawsuit is not time barred simply because it was filed after an implied "reasonable time" for performance: the expiration of a "reasonable time" for performance marks the point at which the statute of limitations begins to run, and not when it ends. Under the facts of this case, where the seller repeatedly asked to extend the time for the buyer's performance, and then, without notice, attempted unilaterally to withdraw from the sale, Tadevosyan has amply demonstrated the probable validity of her claim for specific performance. We grant the petition for writ of mandate.

2

## BACKGROUND

Real party/defendant Sylvia Rosales, as Trustee of the Rodriguez Living Trust, owns property at 1919 Rosalia Road, Los Angeles (the Property). In 2013, the Property was owned by her grandfather, Refugio Rodriguez, as then-Trustee. The parents of Ruben Sukiasyan live next door to the Property. Sukiasyan is the son-in-law of Tadevosyan.

After noticing the Property listed for sale, Sukiasyan initiated discussions with Rosales and Rodriguez to inquire about purchasing the Property. Rodriguez and Tadevosyan entered into an agreement (the Purchase Agreement) whereby Tadevosyan agreed to buy the Property for $650,000. The agreement, which appears on a standard form titled "**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS**" and bears a date of April 19, 2013, provides that "**CLOSE OF ESCROW** shall occur on AFTER MARCH 1, 2014." Sukiasyan sent Rosales the draft agreement on April 24, 2013. Rosales responded that she wanted to have the agreement reviewed by her attorney. She got back to Sukiasyan on May 17, 2013 and agreed to execute the Purchase Agreement. The Purchase Agreement is signed by Rodriguez, for the seller, dated May 17, 2013, and by Tadevosyan, for the buyer, dated July 1, 2013.

On May 17, 2013, Sukiasyan handed Rosales and Rodriguez a cashier's check for the $10,000 deposit required by the Purchase Agreement. Rosales told Sukiasyan she and Rodriguez were looking to move to San Bernardino where some family members lived. After several months, Rosales said she was having issues with her credit but she would have a friend

3

cosign and was actively looking to buy another home. According to Sukiasyan, Rosales "always had some explanation for the continued delays and continuously promised that she and Mr. Rodriguez were going to move out soon." Sukiasyan responded that he would work with them to ensure they had a place to move before Sukiasyan would push to complete the sale.

In March 2017, Sukiasyan asked Rosales to execute an addendum, which Rosales's sister Maggie Rosales signed on March 27, 2017, under power of attorney for Rodriguez. The addendum "[e]xtend[ed] the original agreement dated 4/19/2013 until Sylvia Rosales, Rodriguez family finds a property so they can move out."

Later in 2017, Rosales asked Sukiasyan if Tadevosyan would pay an additional $50,000 toward the purchase price and Tadevosyan agreed, on the condition they go through a real estate broker and record a document on the title to reflect the additional amount. Rosales agreed and on September 18, 2017, Rosales and Sukiasyan met with a real estate broker. The broker told Rosales she needed a note from Rodriguez's physician saying he was mentally incompetent, as that was the only way Rosales could make decisions for him. Rosales said she would work on it.

According to Sukiasyan, Rosales was aware Tadevosyan passed up several opportunities to buy other properties because they had an agreement to buy the Property that is "literally attached to [Sukiasyan's] parents' house." Then Rosales's father, who lived with Rodriguez and Rosales at the Property, passed away. Sukiasyan agreed to give them more time at the Property so they could grieve.

Over time, Sukiasyan noticed Rodriguez's health was declining and paramedics were at the Property on a regular

basis. When Sukiasyan followed up, Rosales said she was "dealing with a lot" and needed more time. In early 2021, Rosales and Rodriguez packed up and left the Property without providing any information to Sukiasyan. The next day, several people came by the Property and said they were contractors who are going to buy and remodel the Property. Sukiasyan tried to reach Rosales, but she ignored him. At some point, Rodriguez passed away.

On June 3, 2021, Tadevosyan submitted a complaint against Rosales, as Trustee of the Rodriguez Living Trust, alleging claims for quiet title, specific performance, and breach of contract. Tadevosyan also recorded a notice of lis pendens on the Property.

Rosales submitted a motion to compel arbitration on November 29, 2021, followed by a motion to expunge lis pendens on January 24, 2022. Tadevosyan filed an opposition to the motion to expunge the lis pendens, supported by Sukiasyan's declaration. The trial court held a hearing on the motions on March 14, 2022 and then granted both motions in a written minute order on March 15, 2022.[1]

Tadevosyan timely filed a writ petition challenging the order expunging lis pendens. After receiving preliminary opposition and a reply to the preliminary opposition from the parties, we issued an order to show cause why relief should not be granted. Rosales did not file a return to the order to show cause. We now grant the petition.

_____

[1] The parties stipulated in the court below to proceed by way of arbitration, and the court granted the motion to compel arbitration based on that stipulation. The court's order on the motion to compel is not at issue in this writ proceeding.

5

**DISCUSSION**

A.     *Legal standards*

A "notice of lis pendens gives constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice. [Citation.]  Any taker of a subsequently created interest in that property takes his interest subject to the outcome of that litigation."  (*Campbell v. Superior Court* (2005) 132 Cal.App.4th 904, 910–911.)  If an action asserts a "real property claim," any party to the action may record a lis pendens.  (Code Civ. Proc., § 405.20.)

Upon motion, a "court shall order" expungement of a lis pendens if the pleading on which the lis pendens is based does not state a real property claim, if the claimant fails to establish by a preponderance of the evidence the probable validity of the claim on which the lis pendens is based, or if the giving of an undertaking would secure adequate relief to the claimant.  (Code Civ. Proc., §§ 405.31, 405.32, 405.33.)

The party opposing expungement bears the burden of proof.  (*Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 525–526.)  The "plaintiff must 'at least establish a prima facie case.  If the defendant makes an appearance, the court must then consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation.' "  (*Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 319.)

This action indisputably involves a real property claim.  At issue is whether Tadevosyan has established the "probable validity" of her claim to specific performance by a preponderance

6

of the evidence. "To obtain specific performance after a breach of contract, a plaintiff must generally show: '(1) the inadequacy of his legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract.' " (*Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 472.)

We review the trial court's factual findings for substantial evidence. (*Howard S. Wright Construction Co. v. Superior Court*, *supra*, 106 Cal.App.4th at p. 320.) "If, however, the material facts are not disputed, then the issue becomes a question of law for our de novo review." (*Ibid*.)

## B.    *Uncertainty*

The trial court concluded the Purchase Agreement was uncertain and therefore unenforceable. An agreement may not be specifically enforced if its terms "are not sufficiently certain to make the precise act which is to be done clearly ascertainable." (Civ. Code, § 3390, subd. (e).) Uncertainty is not a favored defense and available "only when the uncertainty or incompleteness of the contract prevents the court from knowing what to enforce." (*Hennefer v. Butcher* (1986) 182 Cal.App.3d 492, 500.)

To be enforceable, a contract need not include "every term and condition of an agreement." (*Hennefer v. Butcher*, *supra*, 182 Cal.App.3d at p. 500.) " 'The usual and reasonable terms found in similar contracts can be looked to, unexpressed provisions of the contract may be inferred from the writing,

7

external facts may be relied upon, and custom and usage may be resorted to in an effort to supply a deficiency if it does not alter or vary the terms of the agreement.' " (*Id*. at pp. 500–501.) "Parol evidence which does not vary or contradict the written terms of the contract is admissible to explain ambiguities or give meaning and content to words used, provided it does not vary or contradict the terms of the contract." (*Id*. at p. 501.) " 'It is only when the extrinsic evidence fails to remove the ambiguity that specific performance must be refused.' " (*Ibid*.)

The trial court here concluded the Purchase Agreement was uncertain and therefore unenforceable because it did not include a deadline for the sale to occur, as the Purchase Agreement states only that the close of escrow shall occur "AFTER MARCH 1, 2014." Although Sukiasyan stated in his declaration that the parties kept agreeing to extend the closing date, the court found any such extensions invalid; the court reasoned that the extensions were not memorialized in writing and real estate purchase agreements must be in writing pursuant to the statute of frauds. The court further concluded that the written addendum did not resolve the uncertainty, because it states only that the original agreement is extended until the "Sylvia Rosales Rodriguez family finds a property so they can move out" and "did not set a specific date for the close of escrow." The court summed up its ruling on uncertainty as follows: "The absence of a date certain is fatal to this contract, given the amount of time that has passed."

We disagree that the Purchase Agreement was rendered uncertain by the agreement's failure to specify a deadline for the sale to conclude. It is sometimes said that "[i]n a real property transaction, the 'material factors to be ascertained from the

8

written contract are the seller, the buyer, the price to be paid, the time and manner of payment, and the property to be transferred, describing it so it may be identified.' " (*Hennefer v. Butcher*, *supra*, 182 Cal.App.3d at p. 501; see *Blackburn v. Charnley* (2004) 117 Cal.App.4th 758, 766; *Doryon v. Salant* (1977) 75 Cal.App.3d 706, 711.)

However, in *Patel v. Liebermensch* (2008) 45 Cal.4th 344, 350, footnote 2 (*Patel*), the Supreme Court clarified this formulation, holding that the "manner of payment, like the time of payment, is a matter that may be determined by reference to custom and reason when the contract is silent on the question." This holding is consistent with Civil Code section 1657, which provides, "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly—as, for example, if it consists in the payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained."

In *Patel*, *supra*, 45 Cal.4th at page 347, the parties entered into a lease agreement that granted the tenant the following option to buy: "Through the end of the year 2003, the selling price is $290,000. The selling price increases by 3% through the end of the year 2004 and cancels with expiration of your occupancy." The tenant gave notice he was exercising the option to buy, but the parties could not agree on a time frame for closing escrow. (*Id*. at pp. 347–348.) The sale fell through, and the tenant sued for specific performance. Citing the lack of agreement on the time and manner of payment, the court of appeal found the agreement too uncertain to enforce. (*Id*. at p. 349.) The Supreme Court reversed. It held escrow

9

specifications are not "necessary terms" in a real estate contract. (*Id*. at p. 351.) In the absence of a specified time for performance, a "reasonable time" is supplied by implication under Civil Code section 1657. (*Id*. at p. 351; see *House of Prayer v. Evangelical Assn. for India* (2003) 113 Cal.App.4th 48, 54 ["Pursuant to Civil Code section 1657, courts of this state have consistently held a contract for the sale of real estate is not unenforceable for failure to specify a time of performance, because the law implies a reasonable time"].) As in *Patel*, it is possible to imply a "reasonable time" for performance of the Purchase Agreement here. As a result, the agreement is not unenforceable as uncertain.[2]

C.    *Reasonable time for performance*

The essence of the trial court's ruling was not that the Purchase Agreement was uncertain because it did not specify a

---

[2] For the same reason, we reject the trial court's suggestion that "other problems" with the Purchase Agreement contribute to its uncertainty, including the agreement's failure to specify whether Tadevosyan would pay with the proceeds of a loan or all cash, whether the prior owner will vacate the Property immediately or remain in possession for a specific period of time, and whether there are relevant contingencies. Like the time for performance, the manner of performance and incidental matters relating to the opening and closing of escrow may be implied by extrinsic evidence and custom. (See *Patel, supra*, 45 Cal.4th at p. 350, fn. 2 [manner of payment implied by custom and reason when contract is silent on question]; *King v. Stanley* (1948) 32 Cal.2d 584, 589 ["In the absence of express conditions, custom determines incidental matters relating to the opening of an escrow, furnishing deeds, title insurance policies, prorating of taxes, and the like"], disapproved on another ground by *Patel*, at p. 349, fn. 2.)

time for performance, but that, under the facts of this case, the "reasonable time" for performance has elapsed. However, the court erred when it conflated the expiration of the "reasonable time" for performance with the expiration of the time to file suit.

Typically, if one party to a contract fails to perform, e.g., does not open or close escrow by the deadline, whether the deadline is explicit or implied, the other party may sue to enforce the contract. Where the time for performance is implied, the "statute of limitations . . . does not begin to run until expiration of a 'reasonable time.' " (Banke & Segal, Cal. Practice Guide: Civil Procedure Before Trial Statutes of Limitations (The Rutter Group, 2022), § 4:180, citing *Pitzer v. Wedel* (1946) 73 Cal.App.2d 86, 91; see *Caner v. Owners Realty Co.* (1917) 33 Cal.App. 479, 481 [where contract does not specify time for performance, statute of limitations begins to run at expiration of reasonable time].) In other words, the expiration of the "reasonable time" for performance triggers the start, not the end, of the statutory limitations period.

" ' "[W]hat constitutes a reasonable time is a question of fact . . . . ," ' which depends on ' "the situation of the parties, the nature of the transaction, and the facts of the particular case." ' " (*The McCaffrey Group, Inc. v. Superior Court* (2014) 224 Cal.App.4th 1330, 1351; see CACI No. 319 ["If a contract does not state a specific time in which the parties are to meet the requirements of the contract, then the parties must meet them within a reasonable time. What is a reasonable time depends on the facts of each case, including the subject matter of the contract, the reasons each party entered into the contract, and the intentions of the parties at the time they entered the contract"].)

11

In ruling on Rosales's motion to expunge lis pendens, the trial court did not determine when the "reasonable time" for performance expired, only that it had expired. (See *Pitzer v. Wedel*, *supra*, 73 Cal.App.2d at p. 91 [where time for performance is implied, it is court's duty to hear evidence and fix "reasonable time" for performance].) As a result, the trial court's findings do not establish a factual basis for determining that the statute of limitations even commenced running, or for determining that Tadevosyan's lawsuit could be barred by laches.

The trial court concluded the parties' various oral and written agreements to extend the time for performance were invalid under the statute of frauds or, in the case of the addendum, because there was no evidence Maggie Rosales was empowered to sign the agreement under power of attorney. Even if we accept these legal rulings (without deciding them), however, the oral and written communications between the parties in connection with the purported extensions constitute extrinsic evidence the court should have considered in determining and fixing a reasonable time for performance under the original Purchase Agreement. (See *Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912 [mutual intent determined by objective manifestations of parties' intent, including subsequent conduct].) In view of the extensive extrinsic evidence of the seller requesting, and the buyer granting, extensions of time to close the transaction, Tadevosyan has made more than a sufficient showing of the probable validity of her claim for specific performance to support the lis pendens.

## DISPOSITION

The petition for writ of mandate is granted. The trial court is directed to vacate its March 15, 2022 order granting Rosales's motion to expunge lis pendens and enter a new and different order denying the motion. Tadevosyan is to recover her costs in this proceeding.

NOT TO BE PUBLISHED.


                                        MOOR, J.

We concur:


RUBIN, P. J.


BAKER, J.

13